515 So.2d 189 (1987)
Nollie Lee MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 71410.
Supreme Court of Florida.
November 10, 1987.
Larry Helm Spalding and Mark E. Olive, Office of the Capital Collateral Representative, Tallahassee, and Julius L. Chambers and Richard H. Burr, III, NAACP Legal Defense & Educational Fund, Inc., New York City, for appellant.
Robert A. Butterworth, Atty. Gen. and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Following our opinion regarding Martin's counsel's failure to permit Martin's examination to determine his competency to be executed, Martin v. Dugger, 515 So.2d 185 (Fla. 1987), the governor reappointed a panel of three psychiatrists to examine Martin. After the examination, the psychiatrists determined that Martin understood the nature of the death penalty and why it is to be imposed on him. The governor then certified his competency to be executed. See § 922.07, Fla. Stat. (1987). Martin sought review in circuit court pursuant to Florida Rule of Criminal Procedure 3.811. The court considered written submissions from psychiatric experts on both sides, heard arguments from both sides, called for questioning of one of the psychiatrists appointed by the governor, and found Martin competent to be executed.
On appeal Martin claims he had no notice that an evidentiary hearing would be held; that, because of the lack of notice and the time constraints, the court denied him an opportunity to present his witnesses and yet heard the testimony of a live witness who had examined him at the request of the state; and that the court impermissibly failed to distinguish between a rational and a factual understanding of why the death sentence is to be carried out. We find no merit to these claims.
Two days before the hearing, the judge sent word to the parties that a hearing would be held. Holding an evidentiary hearing under rule 3.811 is discretionary *190 with the trial court. At the beginning of the hearing, the court announced it would listen to and consider anything that either side wished to present. The judge had previously examined all the reports, together with transcripts of the experts' examination of Martin. He stated at the end of the hearing that he was prepared to find Martin competent to be executed without testimony and that the psychiatrist's live testimony did not change that conclusion. The trial judge expressly observed that an evidentiary hearing was not required by the rules. Martin has not shown that he would have presented anything not covered in the submitted papers, and we find no error in not stopping these proceedings so that witnesses could be gathered from distant places to reiterate in person what they had already said on paper.
The rational-versus-factual-understanding argument is based on Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Dusky concerned competency to stand trial and held that a defendant should have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as a factual understanding of the proceedings against him." Id. at 402, 80 S.Ct. at 789. Martin's competency to stand trial is not at issue here. We emphasize that the nature of Martin's mental condition is basically the same as was presented and rejected pre-trial on the issue of competency to stand trial. It was also presented and rejected during trial on the issue of his competency at the time of the offense. Further, assuming everything Dr. Lewis says is true, the record clearly shows Martin understands the nature of these proceedings and understands why the death penalty is being imposed on him. Martin admitted in this record his full understanding of these factors.
The papers submitted to and considered by the trial court adequately demonstrate Martin's competency to be executed and support the trial court's ruling. We find the trial court properly applied the necessary factors in determining Martin's competency to be executed. The fact that Martin believes that a satanic conspiracy resulted in his conviction does not override his understanding of why he is being executed. These proceedings are directed only to Martin's competency to be executed, a narrower determination than what is required for competency to stand trial.
We hold that the trial court's determination that Martin understood the nature and effect of the death penalty and why it is to be imposed on him is supported by competent substantial evidence. The trial judge's findings reflect a careful consideration of the matter. The requirements of Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), have been met. See Johnson v. Cabana, 818 F.2d 333 (5th Cir.1987). We affirm the trial court's order and dissolve the stay of execution entered by that court effective 7:00 a.m., November 11, 1987.
No petition for rehearing will be entertained.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
EHRLICH and BARKETT, JJ., dissent with an opinion.
EHRLICH, Justice, dissenting.
Petitioner's attorney was told of the hearing date by a representative of the Attorney General's office, but it was not known if an evidentiary hearing would be permitted. Petitioner wanted to put on live testimony and after being apprised of the hearing date, filed a motion requesting an evidentiary hearing, but his counsel made a very serious error in not inquiring telephonically of the trial judge, either directly, or through the judge's secretary, if a scheduled hearing would include the taking of evidence. If he had exercised this bit of care and foresight, he would have been given an answer in the affirmative. True, the shortness of time may not have permitted counsel to put on as many witnesses as he desired, but he at least would have been able to make an effort to have one or more witnesses present, as did the state. In the *191 life and death situation at hand, I cannot visit the error of counsel on defendant, and it is for this reason that I dissent. While it is true the judge had the benefit of written opinion from the doctors, I cannot equate the effectiveness of a cold report with testimony of a live witness in question and answer form.
I am of the opinion that Florida Rule of Criminal Procedure 3.811 passes constitutional muster and meets the requirements of Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). If the judge had opted to proceed on the basis of the papers furnished him by all counsel plus argument of counsel, my position would be different. Having agreed to permit witnesses to testify, then I feel that defendant should not be deprived of that opportunity because his counsel made a mistake.
I do not share Justice Barkett's view that the Court's opinion requires a petitioner to bring all of his witnesses to a hearing "regardless of whether they will testify." This Court's opinion should have the salutory effect of allerting counsel, if he does not know the fact, to inquire of the court prior to the hearing if testimony will be taken so that he can prepare accordingly.
I do share with Justice Barkett the frustration of having to review large quantities of filings including motions, appendices, and briefs on a short notice and hurry-up basis with a person's life on the line. This is by no means a matter of our choice. It appears to me that this grows out of the fact that the carrying out of the judgment of the Court is an executive function. In the death penalty scenario, it is the Governor's signing of a death warrant and the setting of an execution date that triggers last minute collateral attacks on a judgment of long standing. Consider the history of this case. Mr. Martin was convicted in April 1978 and the death sentence was imposed in November 1978. This Court upheld the conviction and sentence on direct appeal in 1982. Certiorari was denied by the United States Supreme Court. Petitioner filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which was denied, and this Court affirmed in 1984. Petitioner filed a petition for writ of habeas corpus in the United States State District Court which was denied and denial affirmed by the United States Circuit Court of Appeal in 1986 and the United States Supreme Court denied certiorari. Petitioner filed a petition for a writ of habeas corpus in this Court in 1986. This Court denied relief, and certiorari was denied by the United States Supreme Court.
I find it difficult to conclude that society and the criminal justice system have been precipitous with Mr. Martin in the nine years since his conviction, as the penultimate paragraph of Justice Barkett's dissent would have us believe. It is unfair to analogize these death appeals to civil cases and condemnation cases. First and foremost, there is finality of judgment in civil cases. Seemingly this is not true in death penalty cases. The judicial system does not permit repeated collateral attacks in the civil arena which are permitted in the death penalty cases.
This Court does not lightly intercede in the executive function by granting a stay of execution without the gravest of reasons. We respect the separation of powers doctrine as between the executive and the judicial. We give priority attention to petitions for collateral relief in death penalty cases when they are filed after the Governor has signed a death warrant and the date of execution has been set, and this does cause us to work within time constraints that are not part of our routine. I do not question in the slightest the Court's handling of this case. I dissent only because I believe that under the circumstances that exist in this case, petitioner should have been permitted to offer the testimony of live witnesses.
BARKETT, Justice, dissenting.
On Wednesday afternoon, November 4, 1987, the trial judge scheduled a hearing for Friday, November 6, at 11:00 a.m. He did so by notifying the state by telephone and asking the state to notify Martin's counsel. When notified by the state, Martin's *192 counsel asked the state's representative whether or not the hearing was to be an evidentiary proceeding. He was informed that the court did not specify one way or the other. On Thursday, November 5, Martin's counsel filed a motion requesting two alternative forms of relief. First, he asked the court to find Martin incompetent on the papers. Second, he asked for an evidentiary hearing and, because his client is indigent, requested funds to bring in his expert witnesses, four of whom reside outside the state of Florida.
At the hearing on Friday, November 6, the court announced that on the previous evening it had read all of the pleadings and papers filed in the case and would hear any witnesses that were available.
Martin's counsel advised the court that he had no witnesses available because notice of the hearing did not include notification that it was to be an evidentiary proceeding. The judge stated that at the time the hearing was set a day and a half earlier, he did not know himself whether or not evidence would be permitted or required because at that time he had not read the papers. The court then proceeded to hear argument for both sides and the testimony of Dr. Mhatre, examined by the state and cross-examined by counsel for Martin.
At the conclusion of Dr. Mhatre's testimony, the judge ruled. He stated that he came prepared to find Martin competent on the papers and that this inclination was confirmed by Dr. Mhatre's testimony. He also stated that he found the written conclusions of Dr. Lewis, the expert retained by Martin, to be incredible.
The hearing conducted in this instance was flawed procedurally and substantively. First, regardless of anything else Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), might require, it requires at a minimum a "fair adversarial proceeding." That is not what happened here. Procedural due process requires notice of the nature of the proceedings to be held, but none was given in this case. In fact no notice could have been given because, as the majority recognizes, the judge did not decide what type of proceeding would be held until the morning of the hearing. Basic fairness requires the factfinder to hear from both sides at every stage of the proceeding. To hear witnesses representative of only one side of an issue is clearly repugnant to basic notions of due process.
Second, even as a matter of policy, the majority's holding is unsound. We today effectively announced that, in instances such as this one, petitioner's counsel must bring all of his witnesses regardless of whether they will testify. Such a holding will encourage wasteful expenditures that ultimately may be the responsibility of the state. Moreover, by requiring counsel to make these expenditures, we also raise the possibility that the state will refuse to pay. This will discourage law firms and practitioners from volunteering to represent indigent death-row inmates, a service already vital to our proper consideration of collateral challenges.
Third, this case involves a troubling issue on the limits of a trial judge's discretion in deciding the issue of incompetence. This Court today places its imprimatur upon a procedure that I believe is wanting in due process. The "written submissions from psychiatric experts" noted by the majority on behalf of the state consisted in their totality of only the following:
Pursuant to your executive order, the above named inmate was seen for psychiatric evaluation, at Florida State Prison, on November 1, 1987. Doctors Lloyd Miller, Charles Mutter, and Umesh Mhatre conducted the examination. The prison charts and other medical reports were examined.
It is the opinion of the undersigned that Nollie Lee Martin understands the nature and effect of the death penalty, and why it is to be imposed upon him as required by Section 922.07. It is our opinion that he is mentally competent to be executed.
The evidentiary basis of the state's case consists of the above-quoted bare-bones conclusion, signed by the three psychiatrists, and the transcribed interview upon which it was based. To contest the state's *193 case, the defendant places in issue not only the conclusion of the state's psychiatrists but the methods employed by them to arrive at their conclusion.
The petitioner submits the affidavit of Dr. Seymour L. Halleck, a professor of psychiatry from the University of North Carolina School of Medicine, whose credentials even the trial judge noted were impressive on the record. Dr. Halleck opined that the deficiencies in the method of conducting the examination rendered the state psychiatrists' evaluation as having "no scientific validity." Dr. Halleck continued that, "[w]hile psychiatry is certainly not an exact science, it does have certain minimal standards which govern the process of evaluation. In this case, those standards were not met."
Judge Fagan apparently felt that he could not look beyond the procedures utilized by the state's psychiatrists. I believe that this directly contravenes the dictates of Ford. As stated in Ford,
In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), we recognized that, because "psychiatrists disagree widely and frequently on what constitutes mental illness [and] on the appropriate diagnosis to be attached to given behavior and symptoms," the factfinder must resolve differences in opinion within the psychiatric profession "on the basis of the evidence offered by each party" when a defendant's sanity is at issue in a criminal trial. .. . The same holds true after conviction... . Without some questioning of the experts concerning their technical conclusions, a factfinder simply cannot be expected to evaluate the various opinions, particularly when they are themselves inconsistent.

106 S.Ct. at 2604-05 (plurality opinion) (emphasis added).
Fourth, in addition to questioning the validity of the psychiatric procedures, the defendant further contests the state's assertion of Martin's sanity. Although the petitioner concedes that he has a factual understanding of the reasons for his impending execution, he does not have a rational understanding, since he believes that if he committed the crime in question he was possessed to do so by satanic influences. The majority opinion suggests that either there is no distinction between the two, or that a factual understanding rather than a rational one is all that is necessary to be considered sane for execution. This Court thus effectively decides a complex scientific question based on disputed views when there is an unresolved question as to the psychiatric validity of the state's evaluations.
Moreover, I fail to see how the majority can conclude that "the nature of Martin's mental condition is basically the same as was presented and rejected pre-trial." It is true that Martin's mental status has been at issue in prior proceedings. The question for us today, however, is not whether Martin was insane at his trial or three years ago but whether or not he is now competent to be executed. As Justice Powell stated in Ford, this question requires a threshold showing that the prisoner's mental status has substantially changed since his trial. 106 S.Ct. at 2610. On this issue, the record contains only unrebutted evidence that his condition has changed. In a report dated November 6, 1986, Dr. Lewis stated:
I have seen Mr. Martin on two previous occasions, approximately three years ago and two years ago, respectively. At both of those times, Mr. Martin was psychotic. His condition since then, however, has changed appreciably. Mr. Martin is more psychotic than he was several years ago... . At that time, he had been experiencing threatening auditory hallucinations and visual hallucinations, however, this is the first time he has evidenced such an organized delusional system. If he goes to his death at this time, he will do so convinced that he is the victim of a nefarious plot. Thus, Mr. Martin does not understand the connection between his impending death and the crime for which he was sentenced to death.
As stated in Ford, the eighth amendment forbids the execution of insane persons. On this record, we cannot be assured to *194 any meaningful degree that we have given this petitioner the process due him under the Constitution. I thus must conclude that, even if the trial judge decided this case on the papers alone, he thereby abused his discretion. Indeed, the procedure employed in this case involves procedures substantially similar to those found offensive by Ford. 106 S.Ct. at 2605 & n. 3.
Finally, I note that the majority has decided the issues presented by this case in less than a day. This is so even though there is much dispute over the degree of incompetence that would render the death penalty constitutionally improper and enormous variation in the way different states approach the question. See Ward, Competency for Execution: Problems in Law and Psychiatry, 14 Fla.St.L.Rev. 35, 59-68 & n. 146 (discussing various approaches), & 101-107 app. (1986). Nor is there any agreement over a constitutionally proper procedure to be followed in reaching the determination of competency. Id. at 74-84 & nn. 222-235 (discussing various approaches.) The fact that Ford rests on the eighth amendment necessarily implies that some uniform minimum standard for deciding these issues must apply throughout the nation. Given the enormous complexity of these issues, the newness of Ford, and the clearly unsettled nature of the law, I fail to see how we can reach this decision in a few hours' time, without benefit of properly researched briefs and argument based on a thorough evidentiary hearing.
I cannot help but note in conclusion that if courts treated civil cases in the same manner as this death penalty appeal, the reverberations of the civil bar's outcry would shake the walls of the proverbial, if not actual, halls of justice. It is pure whimsy, however, to so speculate since civil lawyers would not be required by our courts to expend the funds to bring expert witnesses from New York without first knowing whether the court would entertain the presentation of any evidence. Nor can I imagine that, in any other context, we would require counsel to gather all pertinent evidence with a single day's notice. If the proceedings at bar today involved the condemnation of land, and not the condemnation of a life, we would never countenance the result reached by the majority.
Time does not permit me to address all the concerns addressed by Justice Ehrlich's dissenting opinion. Death penalty appeals indeed are not "final" in the same way civil appeals may become final. However, the problem of delays must be addressed on a systemwide basis, not by shortening the time for the consideration of a new issue in a particular case. Despite Martin's long legal history, the fact remains that the law changed in 1986 as a result of Ford. The issue here is not that Martin had the benefit of other proceedings throughout the long history of this case. For this appeal, we are confined to a single issue  his competency to be executed. On this question,
[i]t is clear that an insane defendant's Eighth Amendment interest in forestalling his execution unless or until he recovers his sanity cannot be deprived without a "fair hearing."
Ford, 106 S.Ct. at 2609 (Powell, J., concurring). Thus, when entitlement to a hearing has been established, as it has in this case, it should be held with all the due process protections afforded in any other hearing.
I respectfully dissent.