**Ex parte Clarence Curtis JORDAN.**

**No. 70069.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1988.

---

Mary Moore, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Calvin A. Hartmann, Caprice Cosper, and Deborah S. Williams, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

This is a post-conviction application for a writ of habeas corpus filed pursuant to Article 11.07, V.A.C.C.P.

Applicant was convicted of capital murder and punishment was assessed at death. His initial execution date was set for April 7, 1987 but was modified to June 9, 1987. Prior to execution, applicant's competency to be executed was brought to the district court's attention via a determination of his competency to stand trial on an unrelated aggravated assault charge.[1] Pursuant to a court order, and in response to defense counsel's request, a psychiatrist examined applicant and found him incompetent to stand trial on the aggravated assault case. Although the assault charge was later dismissed, the issue of applicant's competency to be executed was raised. The trial court ordered additional psychiatric evaluations, modified the execution date to August 25, 1987, and scheduled a July 24th hearing to determine his competency to be executed.

At the hearing, three psychological evaluations were introduced. Each evaluation concluded that applicant was presently unable to comprehend the pendency, nature and purpose of his execution, but, with appropriate treatment, could attain competency within the foreseeable future. Dr. Jerome Brown, a psychologist employed with Harris County Forensic Psychiatric Services and author of two of the aforementioned competency evaluations, testified that he examined applicant twice, once on March 6, 1987 and again on July 27, 1987, the day of the hearing. Dr. Brown stated that applicant's psychological condition between the two examinations had remained the same and concluded that he was presently incompetent to be executed. Applicant himself testified, unequivocally vouchsafing his incomprehension of the nature and purpose of his approaching execution.

At the conclusion of the hearing the trial court found applicant incompetent to be executed under the criterion of *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 92 L.Ed.2d 335 (1986), and recommended a

---

1. This aggravated assault charge arose out of an altercation which occurred between appellant and the deputies guarding him in the Harris County Jail when he was brought back to Houston from the Texas Department of Corrections for the setting of his execution date.

stay of execution pending the filing and final disposition of his writ to this Court. Further, the court pointed out the alarming lack of any Texas statute specifying the procedures to be followed in raising and determining a defendant's execution competency and in the treatment and periodic reassessment of competency following an incompetency finding. At a loss for any other alternative, the court sua sponte created its own procedures requiring a periodic psychiatric examination of applicant to be conducted every ninety (90) days.

On August 24, 1987, we filed and set applicant's writ of habeas corpus and granted him a stay of execution pending the outcome of said writ. We ordered this cause filed and set so that we could review the validity of the post-conviction incompetency procedures in light of *Ford v. Wainwright, supra,* and address applicant's request for this Court to set aside his execution and order him confined in the Rusk State Hospital.

To our knowledge, this is the first Texas case addressing the issue of execution competency under *Ford v. Wainwright, supra* (hereinafter *Ford*). Thus, we begin with a brief explication of *Ford*. In *Ford*, a narrow majority of the United States Supreme Court held that the Eighth Amendment prohibits a State from executing a person who is insane.[2] The basis of this holding was the common law, and the Court relied on a myriad of rationales from that era. At common law, execution of the insane was considered inhumane, to have no deterrent value, to prevent religious reckoning, to deny the defendant the ability to assist in his own defense and to serve no retributive purpose. *Ford,* 477 U.S. 399, 405–09, 106 S.Ct. at 2600–2601. Such rationales were found to have "no less logical, moral, and practical force" today as they had "centuries ago in England." *Ford,* 106 S.Ct. at 2601. The Court stated that al-though unanimity of rationale was admittedly lacking, the prohibition itself was uniform and concluded that " 'whatever the reason of the law is, it is plain the law is so'." *Ford,* 106 S.Ct. at 2598 (quoting from Hawlis', Remarks on the Trial of Mr. Charles Bateman, [1685] 11 HOW.St.Tr. 474, 477 (1816). The Court then held that, in keeping with our "common law heritage", the Eighth Amendment, applicable to the States through the Fourteenth, prohibits execution of the insane. *Ford,* 106 S.Ct. at 2598.

Beyond this basic constitutional precept, however, a majority of the Court could not agree. Although five Justices concluded that it is cruel and unusual to execute the insane, even a plural majority could not agree as to the procedures necessary to prevent such a result. The central question dividing the Court concerned the intricacy level of the competency fact-finding procedures. Four Justices required the full panoply of trial-type procedures. *Ford,* 106 S.Ct. at 2602–2606 (Marshall, J., with whom Brennan, Blackmun and Stevens, JJ., joined); Three Justices favored a less elaborate, more relaxed hearing where basic due process fairness is ensured. *Ford,* 106 S.Ct. at 2609–2613 (Powell, J., concurring opinion and O'Connor, J., concurring and dissenting opinion with whom White, J., joins). And, two Justices found even the most minimal pro forma procedure, of the kind disavowed in *Ford,* acceptable. *Ford,* 106 S.Ct. at 2614–2615 (Rehnquist, J., with whom Burger, C.J., joins). Further, as pointed out by Justice Powell in his concurring opinion, the Court failed to articulate a proper legal test of insanity in the execution context. Justice Powell, the sole writer on the subject, concluded that the proper test should be whether the defendant was able to comprehend the nature, pendency and purpose of

**2.** Although this is the first Supreme Court case addressing execution competency under the Eighth Amendment, the issue of competency for execution is by no means novel. Historically, the Court addressed the question on Due Process grounds. *Caritativo v. California,* 357 U.S. 549, 78 S.Ct. 1263, 2 L.Ed.2d 1531 (1958) (per curiam); *Solesbee v. Balkcom,* 339 U.S. 9, 70 S.Ct. 457, 94 L.Ed. 604 (1950) (note Justice Frankfurter's famous dissent); *Phyle v. Duffy,* 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494 (1948); *Nobles v. Georgia,* 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515 (1897). These cases bear minimal present precedental value since they preceeded incorporation of the Eighth Amendment into the Due Process Clause.

his execution. *Ford,* 106 S.Ct. at 2608–2609. Thus, ultimately, and after much debate, two critical issues were left open: the constitutionally acceptable procedures necessary to effectuate *Ford* and the proper legal test of execution competency. *Ford,* 106 S.Ct. at 2606.

Although unable to reach a consensus itself, the *Ford* Court expressly charged the individual States with the task of developing procedures to ensure that the insane would not be executed. *Ford,* 106 S.Ct. at 2606. At the present time, Texas has no statute addressing this issue.[3] Ironically, this is a divergence from the past. At common law, Texas forbade execution of the insane and the 1879 through 1965 Codes of Criminal Procedure all contained statutes explicitly barring execution of the insane and setting out the general procedures to be followed once the issue was raised. Old Code, Arts. 781–791; Title 12, ch. 1, Arts. 947–960 (1879); Title 12, ch. 1, Arts. 982–995 (1895); Title 12, ch. 1, Arts. 1017–1030 (1911); Title 12, ch. 1, Arts. 921–932 (1925), repealed, Acts 1957, 55th Leg., p. 1413, ch. 486, sec. 22, and replaced with Arts. 932–1 and 932b, sec. 4 (Supp.1958)

which in turn was recodified in the 1965 Code as Art. 46.02, sec. 5 (Supp.1966). However, in 1975, the legislature completely rewrote Art. 46.02 and inexplicably omitted the section dealing with execution competency. Acts 1975, 64th Leg., p. 1095, ch. 415. Legislative history sheds no light on the reason for this omission.[4]

Presently, and especially in light of *Ford,* there is a grave need for the reenactment of a more specific and directive version of the old statute. We find five procedural issues presented for immediate legislative resolve: (1) how possible incompetency is to be brought to the court's attention; (2) what fact-finding procedures are necessary to determine incompetency; (3) what is the proper legal test of incompetency for execution; (4) upon a finding of incompetency, what treatment is necessitated and where such treatment is to take place; and (5) how and upon what intervals is the possibility of regained competency to be brought to the court's attention. We leave the task of constructing an appropriate statute to the Legislature and invite them to do so at the earliest opportunity.[5]

3. Texas' statutory void is an aberration. Of the forty-one states that have a death penalty, at least thirty have *Ford* statutes. *See,* Ala.Code, sec. 15–16–23 (1982); Ariz.Rev.Stat.Ann., sec. 13–4021 (1978); Ark.Stat.Ann., sec. 43–2622 (1977); Cal.Penal Code, sec. 3701 (1982); Colo. Rev.Stat., sec. 16–8–112 (1978); Conn.Gen.Stat. Ann., sec. 54–101 (1985); Fla.Stat., sec. 922.07 (1985); Ga.Code Ann., sec. 17–10–61 (1982); Ill. Stat.Ann., ch. 38, sec. 1005–2–3 (1982); Ind.Code Ann., sec. 11–10–4–3 (1981); Kan.Stat.Ann., sec. 22–4006 (1981); Ky.Rev.Stat., sec. 431.240(2) (1985); Md.Ann.Code, Art. 27, sec. 75(c) (1985); Mass.Gen.Laws Ann., ch. 279, sec. 62 (1985); Miss.Code Ann., sec. 99–19–57 (1985); Mont. Code Ann., sec. 46–19–201 (1985); Mo.Rev.Stat., sec. 552.060 (1986); Neb.Rev.Stat., sec. 29–2537 (1979); Nev.Rev.Stat., sec. 176.425 (1983); N.J. Stat.Ann., sec. 30:4–82 (1981); N.M.Stat.Ann., sec. 31–14–4 (1984); N.Y.Correct.Law, sec. 655 (1986); Ohio Rev.Code Ann., sec. 2949.28 (1982); Okla.Stat.Ann., title 22, sec. 1005 (1958); R.I.Gen.Laws, secs. 26–4–9 to –13 (1968); S.C. Code Ann., sec. 44–23–220 (1985); S.D.Codified Laws, sec. 23A–27A–24 (1979); Utah Code Ann., sec. 77–19–13 (1982); Va.Code, sec. 19.2–177 (1983); Wyo.Stat.Ann., sec. 7–13–901 (1985).

4. The bill analysis evidences that Art. 46.02 was rewritten for two reasons. First, to completely separate the statutes concerning competency to stand trial and the insanity defense in an at-

tempt to delineate the theretofore nebulous distinction between the two. (See fn. 5 *post*). Second, 46.02 was rewritten to constitutionalize the involuntary commitment procedures for defendants found to be incompetent to stand trial or not guilty by reason of insanity. The single section dealing with execution competency was not in issue, thus it seems to have gotten lost in the translation.

5. Due to the lack of consensus, concrete application of *Ford,* in the way of constructing constitutionally firm procedures, may be a precarious task. Instructive analogies follow: *See,* fn. 2 *ante; In re Emergency Amendment to Florida Rules of Criminal Procedure,* 497 So.2d 643 (Fla. 1986); *In re Amendments to Florida Rules of Criminal Procedure,* 518 So.2d 256 (Fla.1987); *Billiot v. State,* 515 So.2d 1234 (Miss.1987) (enacting Miss.Code, Sec. 99–19–57); *Evans v. McCotter,* 805 F.2d 1210, 1212–1213 (5th Cir. 1986). *Caveat: Johnson v. Cabana,* — U.S. ——, 107 S.Ct. 2207, 95 L.Ed.2d 861 (1987) (Objection voiced to Miss.Code, Sec. 99–19–57). *See generally,* 21 Am.Jur.2d, Criminal Law, Secs. 122–127; 24 C.J.S., Criminal Law, Sec. 1619; Ward, *Competency for Execution; Problems in Law and Psychiatry,* 14 Fla.St.L.Rev. 35, (1986); Larkin, *The Eighth Amendment and the Execution of the Presently Incompetent,* 32 Stan.L.Rev. 765 (1980); *Insanity of the Condemned,* 88 Yale L.Jour. 533 (1979).

Applicant seizes upon the present statutory void concerning the procedures to be followed under *Ford* to initially assert that, since he has been found insane, his execution should be set aside. *Ford* does not require such a result. An insanity finding just prior to execution has no impact on the validity of the underlying conviction and sentence.[6] *Ford* only requires a stay of execution pending regained competency and the utilization of constitutionally valid and accurate fact-finding procedures. *Ford,* 106 S.Ct. at 2606.

Even in the absence of statutory guidelines, the procedures adopted by the trial court in the instant case comport with the constitutional considerations discussed in *Ford.* Applicant's incompetency was fortuitously brought to the court's attention via a determination of his competency to stand trial on an unrelated matter. Once competency became an issue, the court appointed an independent psychologist to examine applicant. Following the examination, the prudent trial judge afforded applicant a full adversarial hearing to determine his competency, the validity of which is not challenged. At the hearing, applicant was represented by counsel, given an opportunity to be heard, present evidence and cross-examine witnesses. The competency ruling was made by a district judge and not, as occurred in *Ford,* by a member of the executive branch. The judge, in his competency determination, utilized the Powell test: whether applicant was capable of comprehending the nature, pendency and purpose of his execution. *Ford,* 106 S.Ct. at 2608–2609. Applicant does not challenge use of this single Justice standard.[7] Following its incompetency finding, the trial court ordered a re-evaluation every ninety days. We find this order, as well as the other procedures followed, to be valid and in compliance with *Ford.*

Applicant further requests a transfer to Rusk for treatment. We are quick to point out that *Ford* only prohibits execution of the insane and does not itself require treatment. Further, although Article 46.01, Sec. 2, V.A.C.C.P., provides for the post-conviction transfer of a mentally ill convict from the Department of Corrections to a mental hospital, it explicitly precludes such transfer for convicts under a death sentence.[8] Although treatment at Rusk would be more intensive and thus preferable, we cannot order applicant's transfer since such would directly conflict with statutory language and intent.

The absence of statutory law in this situation is particularly alarming. The unanimous conclusion reached by the experts who evaluated applicant was that, although he had failed to show improvement in the past, with proper treatment, he could regain competency within the foreseeable future. Regardless of the fact that applicant

---

**6.** Insanity in the execution context must be distinguished from two other competency issues: insanity at the time of the commission of the offense, Art. 46.03, V.A.C.C.P., and incompetency to stand trial, Art. 46.02, V.A.C.C.P. Each of these three distinct competency determinations require different sanity tests, bearing different results correlative to their individual purposes. *See,* 21 Am.Jur.2d, Criminal Law, Sec. 123, 257–58.

**7.** Although this competency standard has not been directly approved by a majority of the Supreme Court, it has been statutorily adopted in some states and favorably referred to by various members of the Court. *See, e.g., Johnson v. Cabana, supra; In re Emergency Amendment to Florida Rules, supra* at 643 (Rule 3.811(a)); *In re Amendments to Florida Rules, supra* at 257 (Rule 3.811(b)); *Martin v. State,* 515 So.2d 189 (Fla.1987); Ill.Ann.Stat., ch. 38, Sec. 1005–2–3. Powell appropriately derived this test from the principles and rationales underlying the requirement of competency for execution and it constitutes a constitutionally firm, yet minimal Eighth Amendment standard. *Ford,* 106 S.Ct. at 2608, fn. 3. The States are obviously free to adopt a broader definition, e.g., one which includes a requirement that the defendant be able to assist in his own defense (*see,* Art. 46.02, V.A.C.C.P., (competency to stand trial standard); *Ford,* 106 S.Ct. at 2608, fn. 3); however, Justice Powell forwards a persuasive argument that a stricter standard would be both unnecessary and unsound. *Ford,* 106 S.Ct. at 2608–2611.

**8.** *Ford* incorrectly cites Art. 46.01, *supra,* as an example of a State statute which provides for suspension of execution and transfer to a mental facility for a death row inmate who has developed mental illness. *Ford,* 106 S.Ct. at 2602, fn. 2. As noted above, Art. 46.01 expressly precludes prisoners under a death sentence.

has no motivation for improvement, it is futile to prohibit his inevitable execution because of insanity and then simply await spontaneous sanity to return. Treatment is a necessity, yet, much to the dismay of the trial court, applicant, the State and this Court, none is statutorily provided. The Texas Department of Corrections provides general, in-house health care facilities for its inmates and, since under Art. 46.01, *supra,* applicant cannot be transferred out of T.D.C. for treatment, this in-house resource should be utilized so that he receives any available psychiatric treatment, with the purpose of such treatment being that he regain competency.

We applaud the trial court's scrupulous action in this matter in that great efforts were made to effectuate the intent of *Ford,* even in the absence of statutory law. We will further applaud prompt legislative action in this area.

The relief prayed for is granted only to the extent that applicant's execution is stayed until the trial court finds him competent for execution. Such competency is to be evaluated in accordance with the procedures previously followed which we have found to be in compliance with *Ford.*