IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. AP-76,374, AP-76,376, & AP-76,381






JONATHAN MARCUS GREEN, Appellant



v.



THE STATE OF TEXAS








ON DIRECT APPEAL FROM CAUSE NO. 00-10-06435-CR


IN THE 221st JUDICIAL DISTRICT COURT


MONTGOMERY COUNTY





 Price, J., filed a concurring opinion in which Johnson and Alcala, JJ., joined.


CONCURRING OPINION



 This Court has no responsibility more awesome than its duty to say what the law is
with respect to the implementation of capital punishment. Few cases we have seen this term
match the importance of these consolidated cases, which call upon us to decide how the
Texas Legislature intended that the Eighth Amendment issue of the competency of a
condemned inmate to be executed should properly be determined. In its opinion today,
however, I fear that the Court has inadvertently thwarted the legislative intent, essentially
making law rather than accurately construing it. If I am wrong about this, then, of course,
the Legislature can simply leave the statute on the books as it currently stands. But if I am
right that the Court has misjudged the legislative intent, I urge the Legislature to amend the
statute in such a way as to make what was its original intent unmistakable, as it did several
years back with respect to the post-conviction DNA statute. (1)

 All three of these cause numbers relate in one way or another to Green's motion,
under Article 46.05 of the Texas Code of Criminal Procedure, for a determination of his
competency to be executed. (2) Our Cause No. AP-76,374 is the review of the trial court
proceedings that is currently permitted, on motion of the losing party below, by Section (l)
of Article 46.05. (3) Cause No. AP-76,376 is a separate habeas corpus application by which
Green is also attempting to raise the issue of his competency to be executed. Finally, Cause
No. AP-76,381 is a purported appeal from an order, entered after the record of the
competency hearing had already been forwarded to us, refusing to recuse the trial court judge
from further participation in the competency proceedings.

I. CAUSE NO. 76,374: THE ARTICLE 46.05 REVIEW

 Green timely filed his motion to have competency determined under the statute--that
is to say, he filed it sufficiently early that this Court is not foreclosed from reviewing the trial
court's ruling thereon. (4) An evidentiary hearing was not held on that motion until two days
before the originally scheduled execution date. There, evidence was presented that would
support either a finding that the appellant was competent or a finding that he was not. Not
surprisingly, the appellant's expert and the State's expert were not in agreement. The
convicting court found the State's expert to be more qualified and more credible. 
Unfortunately, Article 46.05 does not clearly identify a standard by which this Court is to
conduct its "review" of the convicting court's findings under Section (l). The statute says
that the convicting court is required to "determine whether . . . the defendant has established
by a preponderance of the evidence that the defendant is incompetent to be executed." (5) On
motion by either party, the record of the hearing is then forwarded post haste to this Court
for its "review and entry of a judgment of whether to adopt the [convicting] court's order,
findings, or recommendations[.]" (6) Do we, as would be typical in the context of a direct
appeal, give complete deference to the convicting court's resolution of questions of pure fact,
and of mixed questions of law and fact that depend upon an assessment of the witnesses'
demeanor and credibility, and review de novo only pure questions of law and mixed
questions of law and fact that do not turn on credibility? (7) Or do we, instead, as I conclude,
afford the convicting court's findings of fact the kind of qualified but not complete deference
that we give in the context of post-conviction habeas corpus review? (8)

 Today the Court reasons that the most appropriate standard for our "review" under
Article 46.05 is the ordinary, highly deferential appellate standard announced in Guzman. (9) 
I disagree. The statutory language does not sound like direct-appeal language. According
to the statute, we are supposed to "review" the record with an eye toward the "entry of a
judgment of whether to adopt the trial court's order, findings, or recommendations[.]" (10) This
sounds more like the sort of review we conduct of a trial court's recommended findings of
fact and conclusions of law in post-conviction habeas corpus proceedings. In that context,
we are the "ultimate" fact-finder, "with the prerogative to reject the convicting court's
recommendations on those rare occasions when we deem it appropriate, even when they are
supported by the record, if we think another disposition is manifestly better supported by the
record." (11)

 Even if the language of Section (l) does not plainly set up such a posture for this
Court's review, it certainly does not plainly prescribe an ordinary direct appellate posture
either. It is, at best, ambiguous. Consulting legislative history, as is appropriate in
construing an ambiguous statute, (12) reveals that it was indeed the manifest intent of the
drafters of the 2007 amendment to Article 46.05, Section (l), to establish a habeas-like
review process. It may be recalled that, as originally enacted in 1999, Article 46.05 permitted
our review only of a trial court's finding of incompetency to be executed. (13) The 2007
legislation that subsequently amended Section (l) was intended to "equalize[ ] the appellate
rights for the prosecution and the defense and shift[ ] the method of court determinations to
a process similar to that adopted in habeas corpus proceedings." (14) Because of the language
of Section (l) itself, and the evident legislative purpose behind that language, I believe that
the Court makes a mistake in characterizing our 46.05, Section (l), review as an ordinary
direct appeal.

 Having characterized the "review" under Article 46.05 as a "direct appeal" at the
outset, the Court reasons from this premise that an abuse of discretion standard of "appellate"
review is the most appropriate because the competency determination will typically boil
down to a combination of historical fact finding and resolution of the credibility of
(presumably expert) witnesses. (15) Citing cases from other state and federal jurisdictions as
examples, the Court observes that the fact- and credibility-bound nature of the inquiry
"would necessitate a highly deferential standard of review," such as an abuse of discretion
standard. (16) But this logic relies upon the Court's assumption that the trial court is the
institutional fact-finder and we are but an ordinary "appellate" court. That is not what our
Legislature has prescribed in Article 46.05, Section (l). None of the extra-jurisdictional cases
that the Court cites has a statute like ours. (17) By indicating an intention to implement a
habeas-like scheme, the Legislature has made it clear that--at least in cases in which the
competency motion is filed twenty days or more before the scheduled execution, and a
motion for this Court's "review" is made--this Court should serve as the "ultimate" fact-finder. Nothing in our statutory scheme "necessitates" application of the ordinary "highly
deferential" appellate standard when this Court has been assigned the ultimate fact-finding
duty. It is true that in the habeas corpus context we have said that we will usually defer to
the trial court's recommended findings and credibility determinations when they are
supported by the record, as a matter of comity and because the trial judge was "Johnny-on-the-spot" at the competency hearing. In the final analysis, the evidence of incompetency in
this case is not so compelling that I would refuse to pay our ordinary deference to the
convicting court's recommendation today. But we do not invariably have to, as we do under
the appellate abuse of discretion standard that the Court adopts today, and in the next case
that comes along, applying the proper standard could make all the difference. This is not an
ordinary direct appeal.II. CAUSE NO. 76,376: HABEAS CORPUS COGNIZABILITY

 Back before either Article 46.05 or Article 11.071 was enacted, this Court entertained
any claim of incompetency to be executed under the auspices of Article 11.07, as a post-conviction application for writ of habeas corpus in a felony case. In Ex parte Jordan, a 1988
case, we adopted the recommendation of the convicting court and granted habeas corpus
relief on a claim of incompetency to be executed, all the while pleading with the Legislature
to enact a statute that would specifically guide trial courts both substantively and
procedurally. (18) The Legislature would not act for another ten-plus years, finally passing
statutory procedures in 1999. (19) In the meantime, there was never any substantial question
raised about the cognizability of the claim in post-conviction habeas corpus proceedings--if
only because there was no other procedure in Texas to implement the constitutional dictates
of Ford v. Wainwright. (20)

 Perhaps that has changed in light of Alba and Chi. (21) In these cases, a plurality of this
Court held that a challenge to the constitutionality of Texas's lethal injection protocol was
not cognizable in post-conviction habeas corpus proceedings because it did not call into
question the validity of the conviction or death sentence, but only the particular manner in
which the death sentence would be carried out. Today the Court suggests that this same
rationale would render a claim of incompetency to be executed non-cognizable--even if
Green were found to be incompetent, it would invalidate neither his conviction for capital
murder nor his death sentence; it would only delay the latter for the pendency of his
incompetence. (22) The Court also reasons that, because Article 46.05 now provides a statutory
procedure for determining incompetency to be executed, including (since 2007, at least) a
provision for our "review" of the trial court's determination, he cannot challenge his
competency in a post-conviction writ because he has an adequate, statutorily prescribed
remedy at law, and "a writ of habeas corpus is not a substitute for a direct appeal." (23)

 I agree that it will often, if not usually, be the case that a condemned inmate facing
imminent execution with a claim of incompetence will now have an adequate remedy at law
via Article 46.05 (though I disagree that the nature of the Article 46.05-authorized "review"
is an ordinary "direct appeal"), and I agree that Green's is one of those cases. He filed his
motion before the twenty-day deadline to assure both that the trial court could make a timely
determination of his competency and that this Court would be permitted to review that
determination under Section (l). Therefore, I agree with the Court's ultimate conclusion that
Green himself had an adequate legal remedy under Article 46.05 and need not be permitted
also to raise his present claim by way of a habeas corpus proceeding.

 Having said that, I must add that I believe that the Court's opinion with respect to
habeas cognizability may be stated a little too categorically to accommodate every possible
future contingency. (24) We could encounter mentally ill inmates in the future who genuinely
suffer acute mental breakdowns that render them incompetent later than twenty days before
the scheduled execution date. Such inmates would be able to obtain a ruling from the trial
court under Article 46.05, but that ruling would not be subject to our review. (25) They would
have some remedy at law, but it could reasonably be debated whether that legal remedy was
"adequate" absent this Court's review. We might want to leave the door open to an inmate
under these circumstances to seek habeas relief. If Alba and Chi foreclose the possibility of
post-conviction habeas corpus relief under Article 11.071, because a claim of incompetency
does not challenge the conviction or death sentence, it remains at least arguable that an
inmate in this posture should be allowed to seek habeas relief by invoking this Court's
statutorily unregulated original habeas corpus jurisdiction--just as Judge Cochran suggested
in her concurring opinions in Alba and Chi. (26) We should take care not to say anything now
in Cause No. 76,374 that would prevent us from at least entertaining such an argument if and
when the time comes. (27)

III. CAUSE NO. 76,381: REVIEW OF THE RECUSAL MOTION

 The Court declares that Green should lose on the merits of his recusal appeal,
assuming that his appeal is properly before us. (28) But the Court holds that the merits of the
appeal are not properly before us. Because the record of the Article 46.05 hearing had
already been forwarded to this Court for our "review" under Section (l), the Court reasons,
the trial court lacked authority to entertain Green's recusal motion and there is nothing for
him to appeal. (29) But this reasoning also seems to depend upon the Court's assumption that
what Article 46.05 provides for is an ordinary "direct appeal" of the trial court's Article
46.05 ruling. For reasons I have developed at length ante, however, it is clear to me from the
statutory language and from legislative history that our review is not an ordinary "direct
appeal."

 There is a simpler approach--one that conforms to my view that our "review" is more
in the nature of a habeas review. In the non-capital post-conviction habeas corpus context,
we do not consider the trial court to lack jurisdiction or authority to entertain amended or
supplemental pleadings with respect to an Article 11.07 writ of habeas corpus just because
the original writ application has already been forwarded to this Court under the provisions
of Article 11.07, Section (d). (30) We will typically consider whatever matters continue to be
forwarded to us from the convicting court right up to the point at which we finally rule on
the habeas corpus application. Although there is no case law to cite for this proposition, it
has long been the Court's established practice. I do not see why we cannot handle Article
46.05 reviews similarly. A motion to recuse is appropriate in a post-conviction habeas
corpus proceeding, we recently held. (31) I presume that they are equally appropriate for Article
46.05 competency proceedings. A convicting court's "order, findings, or recommendations"
under Article 46.05 can easily be construed to constitute the "final judgment" that suffices
to authorize appeal of a recusal motion under former Texas Rules of Civil Procedure, Rule
18a(f), (now Rule 18a(j)(1)(A)). (32) After all, the trial court's "order, findings, or
recommendations" are the functional equivalent of a "final judgment"--at least in
contemplation of the evident purpose of the rule, to prevent interlocutory appeals. I see no
reason to construe Rule 18a(f) so strictly that we cannot entertain the merits of an adverse
ruling on a recusal motion--even if that motion was not ruled upon until after the record of
the 46.05 hearing has already been forwarded to us--as long as the condemned inmate can
get the matter in front of us before we ourselves have finally disposed of his Article 46.05
review. This approach has the obvious benefit of affording us maximum flexibility to deal
with the inherently exigent nature of last-minute claims of incompetency to be executed. (33)

 In any event, I agree with the Court's apparent dicta that the appellant has not
demonstrated that the regional presiding judge abused its discretion to deny Green's motion
to recuse the convicting court. On that basis I concur in the Court's judgment to deny any
kind of relief in cause number AP-76,381.

IV. CONCLUSION I ultimately agree with the Court's bottom line with respect to all three cause numbers
that are before us. To the extent that the Court's reasoning with respect to all three is
premised, however, upon the notion that Article 46.05 prescribes an ordinary direct appeal
that limits our review of the competency determination to the "highly deferential" abuse of
discretion standard, it fails to credit the manifest legislative intent. For this reason, though
I concur in the various results that the Court reaches, I cannot join its opinion.


FILED: June 27, 2012

PUBLISH
1. See Smith v. State, 165 S.W.3d 361, 363-64 (Tex. Crim. App. 2005) (describing the
Legislature's clarification of its original intent with respect to the substantive standard for post-conviction DNA testing in light of this Court's construction of the statute's initial incarnation in
Kutzner v. State, 75 S.W.3d 427 (Tex. Crim. App. 2002)).
2. Tex. Code Crim. Proc. art. 46.05.
3. See Id. § (l) ("Following the trial court's determination under Subsection (k) [after the trial
court has found a "substantial showing" of incompetency and appointed experts under Subsection
(f), reviewed all of the evidence, and determined whether the defendant has established his
incompetency by a preponderance of the evidence] and on motion of a party, the clerk shall send
immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the
appropriate documents for that court's review and entry of a judgment of whether to adopt the trial
court's order, findings, or recommendations issued under Subsection (g) or (k). The court of
criminal appeals also shall determine whether any existing execution date should be withdrawn and
a stay of execution issued while that court is conducting its review or, if a stay is not issued during
the review, after entry of its judgment.").
4. See Id. § (l-1) ("[T]he court of criminal appeals may not review any finding of the
defendant's competency made by a trial court as a result of a motion filed under this article if the
motion is filed on or after the 20th day before the defendant's scheduled execution date."). Green
filed his Article 46.05 motion on June 1, 2010; his execution was scheduled for June 30, 2010.
5. Id. § (k).
6. Id. § (l).
7. E.g., Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
8. E.g., Ex parte Reed, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008).
9. Majority Opinion at 9 (citing Guzman, supra, at 89).
10. Tex. Code Crim. Proc. art. 46.05 § (l).
11. Ex parte Spencer, 337 S.W.3d 869, 879-80 n.1 (Tex. Crim. App. 2011) (Price, J.,
concurring); Ex parte Robbins, 360 S.W.3d 446, 467 n.14 (Tex. Crim. App. 2011) (Price, J.,
concurring).
12. Boykin v. State, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).
13. Acts 1999, 76th Leg., ch. 654, § 1, p. 3226, eff. Sept. 1, 1999; Ex parte Caldwell, 58 S.W.3d
127, 130 (Tex. Crim. App. 2000).
14. House Bill 1545, House Criminal Jurisprudence Committee Bill Analysis, at 1 (http://www.
capitol.state.tx.us/tlodocs/80R/analysis/PDF/HBO1545H.pdf#navpanes=0). See also Senate
Research Center Bill Analysis, at 1 (http://www.capitol.state.tx.us/tlodocs/80R/analysis/PDF/
HBO1545E.pdf#navpanes=0) ("Article 46.05, Code of Criminal Procedure, is currently interpreted
to contain only a one-way appeal, allowing the prosecution to appeal a court finding that an inmate
is incompetent to be executed, while not providing the same ability to appeal to the inmate. H.B.
1545 equalizes the appellate rights for the prosecution and the defense and shifts the method of
district court determinations to a process similar to that adopted in habeas corpus proceedings."); 
House Research Organization Bill Analysis, at 2 (http:www.hro.house.state.tx.us/pdf/ba80r/
hb1545.pdf#navpanes=0) ("HB 1545 specifically would allow either party to appeal a trial court's
finding on incompetency. The bill would make the appeals process more like those in actions on
writs of habeas corpus by having the trial court make findings and having the Court of Criminal
Appeals make the final decision on appeal.") (All emphases added).
15. Majority Opinion at 9.
16. Id. at 10 & nn.24 & 25.
17. The Court cites three state cases. Majority Opinion at 10 n.24. The first is State v. Irick, 320
S.W.3d 284 (Tenn. 2010). Tennessee has no statute governing competency to be executed
proceedings (or at least it didn't as of Irick), so its procedure is court-made. In Van Tran v. State,
6 S.W.3d 257, 271-72 (Tenn. 1999), the Tennessee Supreme Court judicially crafted a procedure that
included an "appeal" of the trial court's ruling. Even then, the appellate standard was: "the trial
court's finding on the issue of competency will be reviewed as a question of fact and presumed
correct, unless the evidence in the record preponderates against the finding." Id. at 272. This hardly
sounds like an abuse of discretion standard of review. The second is Commonwealth v. Banks, 29
A.3d 1129, 1135 (Pa. 2011). Like Tennessee, however, Pennsylvania has no statutory scheme in
place for determining competency to be executed, and the Pennsylvania Supreme Court also found
itself having to judicially fashion a constitutionally adequate procedure out of whole cloth. In the
absence of contrary statutory language, the Court appointed a master to find facts and then accorded
ordinary appellate deference to the master's fact findings. The third case is State v. Brooks, 2011-Ohio-5877 (Ohio Ct. App. 2011). While Ohio has a statutory scheme for determining competency,
the statutes assign the fact finding function exclusively to the trial court and do not even make
mention of review by a higher court. Ohio Rev. Code Ann. §§ 2949.28 & 2949.29.


 The Court next cites two federal cases. Majority Opinion at 10 n.25. The first case is
Bedford v. Bobby, 645 F.3d 372, 375 (6th Cir. 2011). Bedford is indeed a case about competency to
be executed, but the issue to which the Sixth Circuit applied the abuse of discretion standard was not
the substantive competency issue, but whether the federal habeas applicant was entitled to a stay of
execution while the federal courts reviewed the merits of his eleventh hour claim. The second case
that the Court cites, Ferguson v. Sec'y for the Dept. of Corr., 580 F.3d 1183, 1221 (11th Cir. 2009),
does not even involve an issue of competency to be executed at all. In short, Ferguson and Bedford
are not cases, as the Court describes them, "that have adopted an abuse-of-discretion standard in
reviewing competency-to-be-executed findings." Majority Opinion at 10. 
18. 758 S.W.2d 250, 252, 254-55 (Tex. Crim. App. 1988).
19. Acts 1999, 76th Leg., ch. 654, § 1, eff. Sept. 1, 1999.
20. 477 U.S. 399 (1986).
21. Ex parte Alba, 256 S.W.3d 682 (Tex. Crim. App. 2008) (plurality op.); Ex parte Chi, 256
S.W.3d 702 (Tex. Crim. App. 2008) (plurality op.).
22. Majority Opinion at 6-7 (observing in context of discussing Alba that "[a] finding of
incompetency results in only a stay during the defendant's incompetence; it would not render the
appellant's sentence invalid").
23. Id. at 7.
24. See id. ("Neither the plain language of Article 11.071 nor our decisions in Smith and Alba
establish competency-to-be-executed claims as cognizable on a writ of habeas corpus. Because
Article 46.05 provides the appellant with all of the process that is due to him, we see no reason to
depart from the well-established principle that a writ of habeas corpus is not a substitute for a direct
appeal.").
25. Tex. Code Crim. Proc. art. 46.05, § (l-1).
26. Alba, supra, at 689-90 (Cochran, J., concurring); Chi, supra, at 704 (Cochran, J.,
concurring).
27. Green also argues that we must permit him to pursue habeas relief on his competency claim
because of certain deficiencies in the statutory scheme under Article 46.05. The Court correctly
rejects this argument, but once again I fear it speaks unnecessarily broadly in its rejection. The Court
declares globally that "[w]e do not find any constitutional infirmities lurking within Article 46.05." 
Majority Opinion at 7. I agree that the particular application of Article 46.05 to Green satisfied the
procedural dictates of Panetti v. Quarterman, 551 U.S. 930 (2007) . But I disagree that there are
no--at least potential--constitutional infirmities in the statute as it might apply to future death row
inmates. I presume the trial court found that Green made the threshold showing to allow him to
obtain expert examination under Article 46.05, Section (f), since it in fact appointed two experts. 
But Section (f) does not explicitly require the trial court to assign one of those experts to assist the
defense to rebut any showing by the State of competency. In a given case, this statutory deficiency
might well violate Panetti's requirement "to provide petitioner with an adequate opportunity to
submit expert evidence in response to the report filed by the court-appointed experts." 551 U.S. at
951. The prudent trial court in Green's case seems to have assigned one of the statutorily authorized
experts specifically to assist Green--in any event, Green was able to rely heavily upon the opinion
of Dr. Mosnik to make his case for incompetency. I believe this satisfies the "basic requirement"
that the defense be adequately equipped "to submit 'evidence and argument from the prisoner's
counsel, including expert psychiatric evidence that may differ from the State's own psychiatric
examination[.]'" Id. at 950 (quoting Justice Powell's concurring opinion in Ford, supra, at 427). 
But it is not at all difficult to imagine potential constitutional infirmities that might arise on the facts
of some future case. Article 46.05 could very well be applied some day in such a way that it would
"infringe upon . . . these rights." Majority Opinion at 8. There is no need to declare the statute
constitutionally flawless to dispose of this case, and the Court should not.
28. Majority Opinion at 18.
29. Id. at 16-18.
30. Tex. Code Crim. Proc. art. 11.07 § (d).
31. Ex parte Sinegar, 324 S.W.3d 578 (Tex. Crim. App. 2010).
32. Tex. R. Civ. Proc. 18a(f) ("If the motion is denied, it may be reviewed for abuse of
discretion on appeal from the final judgment.").
33. The Court argues that a much better vehicle for an inmate in Green's position to challenge
an adverse recusal ruling would be an original application for writ of habeas corpus (not brought
under the auspices of Articles 11.07, 11.071 or 11.072 of the Code of Criminal Procedure), invoking
our habeas corpus jurisdiction under Article V of the Texas Constitution. Majority Opinion at 17-18
& n.50. It is not self-evident to me, however, that a challenge to a lower court's ruling on a recusal
motion is cognizable in a writ of habeas corpus of any description. "The writ of habeas corpus is
the remedy to be used when any person is restrained in his liberty." Tex. Code Crim. Proc. art.
11.01. I doubt that our correction of an erroneous ruling on a motion to recuse would affect the
legality of Green's literal "custody" or "restraint." See Tex. Code Crim. Proc. arts. 11.21 through
11.23. Nor is it likely that Green otherwise has any kind of residual "liberty interest" in remedying
an erroneous ruling on his motion to recuse. Compare Ex parte Alba, supra, at 693 (Price, J.,
dissenting) (even death row inmates who may constitutionally be executed have a residual liberty
interest in not being executed in a manifestly cruel and unusual manner, which interest should be
deemed subject to vindication via post-conviction writ of habeas corpus).