

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. AP-75,510

### EX PARTE JOHN AVALOS ALBA, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS FROM COLLIN COUNTY

**PRICE, J., filed a dissenting opinion.**

### DISSENTING OPINION

Eight months ago, the momentum of the death machine in Texas propelled us to an unseemly execution. On the same day that the United States Supreme Court agreed to examine the constitutionality of the Kentucky protocol for lethal injection,[1] Michael Richard died on the gurney before the mechanism could grind to a halt. The Supreme Court has since spoken, and a plurality has provided us with a standard for measuring the constitutionality

---

[1] *Baze v. Rees*, 128 S.Ct. 34, *amended* 128 S.Ct. 372 (2007).

of our own execution protocol.[2] The question for our consideration is whether our own

lethal-injection protocol, particularly the protocol for assuring that the first anesthetic drug

is properly administered, is "substantially similar" to that in Kentucky which the plurality

upheld.[3] Today, a plurality of this Court dismisses two habeas corpus applications raising

such a claim,[4] holding that the claim is not cognizable under Article 11.071 of the Texas Code

---

[2]

In *Baze v. Rees*, __ U.S. __, 128 S.Ct. 1520 (2008), the plurality articulated a standard for deciding whether a particular method of execution violates the Eighth Amendment prohibition against cruel and unusual punishments in light of the availability of alternatives that are arguably more humane. It will not suffice to establish such a claim, the *Baze* plurality reasoned, merely to show that "a slightly or marginally safer alternative" exists to the current execution regime. 128 S.Ct. at 1531.

> Instead, the proffered alternative must effectively address a substantial risk of serious harm. * * * To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as "cruel and unusual" under the Eighth Amendment.

*Id*. At 1532. Measuring Kentucky's lethal-injection protocol against this standard, the *Baze* plurality concluded that it passed Eighth Amendment muster, essentially because the first of the three drugs administered was conceded to be sufficient to anaesthetize the condemned prior to administration of the other two drugs, and Kentucky's safeguards for assuring that the first drug was properly administered, while not necessarily optimal, were deemed adequate. *Id*. at 1532-38. While Texas's lethal-injection protocol, from what I know of it, utilizes the same three drugs, we have yet to litigate in Texas whether the safeguards in place (whatever they are) for assuring proper administration of the first, anesthetizing drug are at least as comprehensive as Kentucky's.

[3]

*Id*. at 1537.

[4]

*Ex parte Alba*, __ S.W.3d __ (Tex. Crim. App., No. AP-75,510, delivered June 11, 2008); *Ex parte Chi*, __ S.W.3d __ (Tex. Crim. App., Nos. AP-75,930 & AP-75,931, delivered June 11, 2008).

of Criminal Procedure, our capital habeas corpus statute.[5]  In my view, the claim falls comfortably within the ambit of the statute.  Nevertheless, the Court insists on withholding the rudiments of due process and due course of law in its equally unseemly haste to crank the machine back up.  I cannot go along with this.

## COGNIZABILITY UNDER ARTICLE 11.071

I have argued in the past that a challenge to our lethal-injection protocol ought to be entertained in a subsequent application for writ of habeas corpus under Section 5 of Article 11.071.[6]  I have also dissented to the Court's unwillingness in the past even to consider "whether a challenge to the lethal-injection protocol actually constitutes a post-conviction application for writ of habeas corpus *at all*, under Article 11.071, since it may not constitute a challenge to 'a judgment imposing a penalty of death.'"[7]  Today the Court finally reaches the question of cognizability of such a claim and concludes that it is not cognizable.  I disagree.

"The writ of habeas corpus is a procedural device for subjecting executive, judicial,

---

[5] TEX. CODE CRIM. PROC. art. 11.071.

[6] TEX. CODE CRIM. PROC. art. 11.071, § 5.  *See Ex parte Hopkins*, 160 S.W.3d 9 (Tex. Crim. App. 2004) (Price, J., dissenting to denial of stay of execution).

[7] *Ex parte O'Brien*, 190 S.W.3d 677, 684 (Tex. Crim. App. 2006) (Price, J., dissenting to lifting of stay of execution), *citing Ex parte Kerr*, 64 S.W.3d 414, 418 (Tex. Crim. App. 2004).

or private restraints on liberty to judicial scrutiny."[8] Even a death-row inmate retains certain residual—albeit necessarily limited, but nevertheless constitutionally protected—liberty interests.[9] Among those is the interest in not having the executive branch of government, in the form of the Texas Department of Criminal Justice, Correctional Institutions Division, which is tasked with carrying out his lawful execution, do so in a manner that would constitute "cruel and unusual punishment[ ]" as prohibited by the Eighth Amendment to the United States Constitution,[10] or "cruel or unusual punishment" as prohibited by Article I, § 13 of the Texas Constitution.[11] Surely we would not sit idly by and allow the applicant to be drawn and quartered, if that were the method that the Director of TDCJ-CID [the Director] chose to carry out his execution, since such a method would unquestionably constitute cruel

---

[8] *Peyton v. Rowe*, 391 U.S. 54, 58 (1968).

[9] *Ex parte Patterson*, 740 S.W.2d 766, 770-73 (Tex. Crim. App. 1987). *See also Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal citations and quotations omitted); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]") (internal citation and quotation omitted).

[10] U.S.CONST. amend. VIII. In *Baze v. Rees*, *supra*, S.Ct. at 1533, the plurality acknowledged that, "failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride."

[11] TEX. CONST. art. I, § 13.

and unusual punishment.[12] Yet today the Court declares that we are powerless to invoke our habeas corpus authority to halt such an unconstitutional implementation of an otherwise lawful warrant of execution because the *method* of execution, unconstitutional though it may be, does not effect the "fact or the length of confinement."[13] I find this holding intolerable.[14]

---

[12] *In re Kemmler*, 136 U.S. 436, 446 (1890) ("if the punishment prescribed for an offense against the laws of the State were manifestly cruel and unusual, as burning at the stake, crucifixion, breaking on the wheel, or the like, it would be the duty of the courts to adjudge such penalties to be within the constitutional prohibition."). Such forms of "superadded" execution unquestionably violate the Eighth Amendment. *Baze v. Rees*, *supra*, S.Ct. at 1556-59 (Thomas, J., concurring).

[13] *Ex parte Alba*, plurality opinion, at 4.

[14] Should the Director choose to carry out an execution in a manner that patently violates the Eighth Amendment or Article I, § 13, such as those mentioned in *Kemmler*, *supra*, he would likely be subject to the writ of mandamus or prohibition. But with new technology comes new methods, such as electrocution, lethal gas, or lethal injection, and it will not be so obvious whether these new methods unduly prolong the execution or inflict reasonably avoidable pain. New methods are not susceptible to relief in mandamus or prohibition proceedings unless and until they are definitively declared unconstitutional. For this reason, I agree with the plurality in *Chi* that the applicant's application for writ of prohibition should be denied.

(I disagree, however, that the reason it should be denied is that his "Eighth Amendment claim has no merit[.]" *Ex parte Chi*, plurality opinion at 5. I do not know whether his claim has merit or not, and neither can the plurality without first litigating it. The Court declares that our protocol for lethal injection is "materially indistinguishable" from Kentucky's, citing Chi's own application for writ of prohibition. *Id*., at 2-3 & n.2. This is a disingenuous reading of Chi's pre-*Baze* pleading. In that pleading, filed at the time of his impending execution, Chi alleged that the Texas lethal injection protocol is "materially indistinguishable" from that which the Supreme Court had just agreed to review. The Court now treats this statement as a kind of post-*Baze* concession that the particular Texas protocol for administering the first anesthetic drug is "substantially similar" to the one approved by the Supreme Court. But that was not the applicant's assertion at all! The applicant claimed that the *overall* lethal injection protocols were "materially indistinguishable." One can hardly blame him for making such a general claim at the time. He simply meant that he should not be executed so long as the overall three-drug protocol was under Supreme Court scrutiny. The Court grievously errs to interpret the applicant's initial pleading in this way, and then, on the basis of that misinterpretation, to simply declare that his Eighth Amendment claim is "has no merit.")

A death-row inmate does not serve a specific length of sentence; he is confined until he is either executed, commuted, or exonerated. It makes little sense in this context to analyze habeas corpus cognizability in terms of the "fact or length" of confinement. The convicted capital murderer who has been legitimately sentenced to death has no liberty interest in the sense that he can ever expect to be free from confinement, so long as he lives. Indeed, he does not even retain a "life" interest that is sufficient to overcome the State's legitimate interest in extinguishing it, consonant with due process. The one substantive constitutional right he unquestionably retains, however, is the right, when the time comes, to be executed in a humane manner. I cannot accept that the Great Writ should not be an available remedy for the applicant to raise an Eighth Amendment challenge to the manner of his execution on the ground that it does not impact the "fact or length" of his confinement, which is incidental, but only the manner of his execution.

Article 11.071 of the Code of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death."[15] If the Director's purported authority for subjecting a death-

---

But a death-row inmate should still have some extraordinary avenue to test the constitutional validity of a novel method of execution. Because he retains a residual liberty interest in not being executed in a manner that violates the Eighth Amendment or Article 1, § 13, the writ of habeas corpus ought to be made available to him. Any other holding, in my view, would suspend the writ, in violation of Article I, § 12. TEX. CONST. art. I, § 12 ("The writ of habeas corpus is a writ of right, and shall never be suspended."); TEX. CODE CRIM. PROC. art. 1.08 (same).

[15] TEX. CODE CRIM. PROC. art. 11.071, § 1.

row inmate to a lingering and torturous death is the warrant of execution, which in turn is authorized by the mandate of this Court following affirmance of a trial court's judgment imposing the death penalty, then any "relief" the inmate seeks on account of the obvious Eighth Amendment violation would be relief from that judgment. It may not constitute absolute relief in the sense that it would absolve the inmate from imposition of the ultimate penalty of death. But it would constitute relief from the unlawful implementation of an otherwise lawful penalty and release the inmate from the incremental encroachment upon his liberty interest in not being put to death in an inhumane manner. A valid judgment and sentence of death authorizes an execution, but it does not (and could not under any circumstances) authorize a cruel and unusual execution.[16] For this reason I would hold that the applicant's claim is cognizable under Article 11.071.

For the proposition that to be cognizable a post-conviction habeas claim must

---

[16]

By comparison, suppose an inmate were unlawfully confined beyond the term of punishment imposed by the lawful judgment authorizing his incarceration. Suppose further that the reason for his unlawful continued confinement was that the Director had miscalculated the amount of time he had served. Would we say that a habeas corpus application filed by this inmate to secure his release was not available to him because his continued confinement, although unlawful, was no longer due to the original judgment, but to the Director's mistake, and that he therefore was not seeking "relief from a felony judgment imposing a penalty other than death" for purposes of Article 11.07, Section 1? It seems to me that as long as the Director believed he was justified in incarcerating the inmate on authority of the judgment, we would afford relief under Article 11.07. Should we not likewise make "relief" available under Article 11.071 should the Director mistakenly believe that the judgment of conviction and sentence of death authorized him to draw and quarter a death-row inmate?

challenge the "fact or the length or confinement,"[17] the plurality cites *Ex parte Lockett*.[18] *Lockett*, in turn, cites only a habeas corpus practice manual.[19] The manual cites nothing at all for this proposition. It does go on to say: "The Court of Criminal Appeals has held that without some form of confinement, you can't invoke Art. 11.07."[20] And it is true that in 1987, in *Ex parte Renier*,[21] the Court held that some form of "confinement" was a necessary prerequisite to obtaining relief under Article 11.07.[22] However, as the practice manual also points out, the Legislature amended Article 11.07 in 1995. In that amendment the Legislature explicitly defined "confinement" to mean "confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus."[23] It is doubtful, therefore, that literal confinement is even a prerequisite to post-

---

[17]

*Ex parte Alba*, plurality opinion at 4.

[18]

956 S.W.2d 41 (Tex. Crim. App. 1997).

[19]

*Id*. at 42, *citing* J. Jasuta, *et al.*, *Texas Criminal Writ Practice* 88 (1997).

[20]

Jasuta, *supra*.

[21]

734 S.W.2d 349 (Tex. Crim. App. 1987).

[22]

*Id.* at 353 ("[U]nless an applicant is confined pursuant to a commitment for a felony conviction, a postconviction application for habeas corpus relief from collateral consequences of another conviction will not lie under Article 11.07.")

[23]

Jasuta, *et al.*, *supra*, *citing* Article 11.07, § 3. *See* Acts 1995, 74th Leg., ch. 319, § 5, p. 2771, eff. Sept. 1, 1995. This was the same legislative act that introduced Article 11.071. Nothing in Article 11.071 predicates the availability of relief expressly on "confinement."

conviction habeas relief under Article 11.07 anymore, much less a showing that a claim effects the "fact or length" of confinement. And in any event, the Court made it clear in *Renier* that, but for another available post-conviction habeas forum to challenge a "restraint" less than confinement, the legislative limitation on post-conviction habeas corpus that was then found to be embodied in Article 11.07 would have constituted an unconstitutional suspension of the writ.[24] For these reasons, the Court today would do well to abjure any literal application of the "fact and length of confinement" language of *Lockett* to reject habeas cognizability to a claim that challenges a restraint upon a liberty interest, but has nothing to do with literal "confinement."

There are other cases in which the Court has held that a purported habeas corpus application that does not challenge "confinement" does not state a cognizable claim. The plurality cites one[25]—*Ex parte Kerr*.[26] In *Kerr*, the purported writ did not challenge the conviction or death sentence of the applicant, but instead raised claims about the constitutionality of the procedures prescribed by Article 11.071 itself. Had we agreed with all of Kerr's arguments, we still would have had no basis to grant him habeas corpus relief,

---

[24] 734 S.W.2d at 353. The Court held that, because Renier could still apply for a writ of habeas corpus to challenge his restraint-less-than-confinement in the district court under Article V, § 8 of the Texas Constitution, the Legislature did not unconstitutionally suspend the writ under Article I, § 12, by prohibiting him from applying for a writ of habeas corpus under Article 11.07. *Id*.

[25] *Ex parte Alba*, opinion, at 4-5.

[26] 64 S.W.3d 414 (Tex. Crim. App. 2002).

either from his conviction or his death sentence. In fact, Kerr alleged no unconstitutional restraint whatsoever that could be said to be a product of his capital conviction, never mind restraint that would rise to the level of "confinement." The same could be said about *Ex parte Baker*.[27] There we held that claims challenging the adequacy of counsel in Chapter 64 hearings for post-conviction DNA testing are not cognizable under Article 11.07 because such proceedings do not result in additional or independent "confinement" beyond that which flows from the initial conviction, which was not challenged. As in *Kerr*, the purported habeas corpus application identified no "restraint" of any degree, much less confinement, that resulted on account of Baker's Chapter 64 attorney's alleged ineffectiveness and therefore stated no cognizable claim. By contrast, as I have already shown, each of the instant applicants has alleged a definite restraint upon his liberty interest in avoiding a cruel and unusual punishment. We cannot deny them *some* habeas corpus forum without effectively suspending the writ.

The plurality also seems to rely, by analogy, upon the opinion of the Supreme Court in *Hill v. McDonough*[28] for the proposition that claims that do not implicate the "fact or the length" of confinement are not cognizable in habeas corpus.[29] Even the plurality concedes,

---

[27] 185 S.W.3d 894 (Tex. Crim. App. 2006). *See also Ex parte Suhre*, 185 S.W.3d 898 (Tex. Crim. App. 2006); *Ex parte Reyes*, 209 S.W.3d 126 (Tex. Crim. App. 2006).

[28] 547 U.S. 573, 126 S.Ct. 2096 (2006).

[29] *Ex parte Alba*, plurality opinion, at 5-6.

however, that *Hill* was not concerned with whether claims challenging the method of execution are cognizable in a federal habeas corpus petition.[30] The question in *Hill* was whether a challenge to the method of execution goes to the "core" concerns of federal habeas corpus—"the lawfulness of confinement or . . . particulars affecting duration"—such that it *must* be raised, if at all, in habeas corpus proceedings and may *not* be brought in a civil-rights lawsuit under 42 U.S.C. § 1983.[31] This distinction between "core" claims that go to the "fact or duration of the confinement" and mere "conditions" or circumstances of confinement had its genesis in *Preiser v. Rodriguez*.[32] The *ratio decidendi* of that opinion was comity. An inmate should not be allowed to bypass the state-court exhaustion requirement inherent in federal habeas corpus proceedings by raising challenges to the fact or duration of his confinement in a civil-rights lawsuit. Such claims, the Supreme Court held, although they fall within the ambit of the broad language of Section 1983, must nevertheless be brought under the more specific provisions of the federal habeas corpus statute, 28 U.S.C. § 2254. Otherwise, an inmate could forego bringing his challenge in state court altogether by couching it in terms of a federal Section 1983 civil-rights lawsuit and moving straight into federal court, thereby defeating the manifest intent of Congress.

---

[30] *Id*., slip op. at 6 ("While *Hill* determined only that this type of claim did not *have* to be raised on habeas rather than that it *could not* be raised on habeas, the Court's reasoning is instructive.").

[31] *Hill v. McDonough*, *supra*, S.Ct. at 2101.

[32] 411 U.S. 475, 499 (1973).

But this does not amount to a holding that challenges to the conditions or circumstances of confinement are not cognizable in a federal habeas corpus proceeding. To the contrary, the Supreme Court observed in *Preiser v. Rodriguez*:

> This is not to say that habeas corpus may not also be available to challenge such prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.[33]

Thus, Supreme Court recognized that unlawful restraint can occur even in the context of otherwise lawful custody, and such restraint may be subject to an equitable remedy via habeas corpus. The fact that Hill's particular challenge to the method of his execution did not go to the "core" concerns of habeas corpus only meant that he could proceed with his civil-rights lawsuit under Section 1983. It did not mean that such a challenge was not *also* cognizable in a federal habeas corpus proceeding.

At the state level, there is no reason to defer to the interests of comity, federalism, or exhaustion of state remedies in deciding what should be cognizable under the Great Writ. There is no particular need, as there was in *Preiser v. Rodriguez*, to distinguish habeas corpus claims that challenge the fact or duration of confinement from those that challenge only conditions or circumstances of confinement in order to protect the right of the states to be the first to litigate the constitutionality of restraint of liberty. If a condition or circumstance of

---

[33] *Id*. at 499 (citations omitted).

an inmate's confinement amounts to an incremental restraint upon his residual liberty interest that is unconstitutional, then, as I have already suggested, it would amount to a suspension of the writ to provide the inmate no habeas corpus forum to ventilate his claim. The plurality errs in relying upon *Hill* to hold otherwise.

The plurality also reasons that Article 11.071 is not available to remedy some potential *future* constitutional violation.[34] "Habeas corpus serves to remedy existing constitutional violations; it is not for claims that a statute may potentially be applied in a way that may possibly be determined to be unconstitutional in the future."[35] Apparently there has been no constitutional violation in the applicant's case because he has not yet been executed; the likelihood that he might actually *be* executed by lethal injection remains wholly speculative, the judgment of the trial court and this Court's mandate on appeal notwithstanding. Each of these applicants will be heartened to learn, I suppose, that as soon as the lethal drugs *do* begin to flow through his veins, his claim that the drugs will cause him such reasonably

---

[34] *Ex parte Alba*, plurality opinion at 7-8.

[35] *Id.* To the extent that this assertion embraces a notion that constitutional violations that have not already been firmly established in case law are not cognizable in habeas corpus, this pronouncement, for which no authority is cited, sounds vaguely like the federal restriction on the cognizability of new claims in habeas corpus embodied in *Teague v. Lane*, 489 U.S. 288 (1989). But the *Teague* rule is also grounded in principles of comity and deference to state courts, which have no application in state habeas corpus jurisprudence. *Cf. Danforth v.* Minnesota, 552 U.S. ___, 128 S.Ct. 1029, 1041(2008) ("If anything, considerations of comity militate in favor of allowing state courts to grant habeas corpus relief to a broader class of individuals than is required by *Teague*."). I am not aware that we have ever adopted such a rule of cognizability in Texas.

avoidable pain as to violate the Eighth Amendment and Article I, § 13 of the Texas Constitution will become cognizable. Although I imagine he will be somewhat disappointed to learn that we have declared his claim to be mooted by his untimely death.

Article 11.071 presently provides the exclusive procedure for the exercise of this Court's original habeas corpus jurisdiction when "the applicant seeks relief from a judgment imposing a penalty of death."[36] The Legislature is empowered by Article V, § 5(c) of the Texas Constitution to regulate the procedure by which we entertain post-conviction applications for writ of habeas corpus.[37] But in neither Article 11.071 nor Article 11.07 does the Legislature presently require a showing of restraint rising to the level of "confinement" before this Court may exercise its habeas corpus jurisdiction. Even if the Legislature did, such a substantive limitation on our original habeas corpus jurisdiction would likely constitute a suspension of the writ in violation of Article I, § 12. The Legislature is free to regulate the how, when, and where of our original post-conviction habeas jurisdiction. But I do not think that, even under Article V, § 5(c), the Legislature would ever be free to

---

[36]

*Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998), *citing Ex parte Davis*, 947 S.W.2d 216, 221, 223 (Tex. Crim. App. 1996) (Opinion of McCormick, P.J.) ("the Legislature clearly has intended for Article 11.071 to provide the exclusive means by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases.").

[37]

*See* TEX. CONST. art. V, § 5(c) ("Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus[.]"). *See also Ex parte Davis*, *supra*, at 223.

circumscribe *what* is cognizable in the Great Writ without violating Article I, § 12.

An inmate who alleges that the proposed method of his execution would be cruel and unusual has stated a claim of unconstitutional "restraint" that emanates directly from "a judgment imposing a penalty of death."[38] His claim falls comfortably within the ambit of the statute. It makes no sense for the Court, especially at the present time, to impose a "fact or length of confinement" limitation upon the applicant's cruel and unusual punishment claim.

## DUE PROCESS AND DUE COURSE OF LAW

No fair-minded citizen approves of the execution of an innocent man. As judges, we are only a little less appalled at the prospect of executing a man without due process of law. We should be equally hesitant to execute a man in a manner that would violate his Eighth Amendment guarantee against cruel and unusual punishment. We are expected to insist upon all ordinary process to protect against such an unpalatable result.

As the Court acknowledges,[39] the applicant has alleged, *inter alia*, that the first, anesthetic drug is not adequately administered under our lethal-injection protocol. He has thus stated a claim that, if true, would seem to entitle him to relief under *Baze*.[40] Moreover,

---

[38] TEX. CODE CRIM. PROC. art. 11.071, § 1.

[39] *Ex parte Chi*, plurality opinion at 3-4 ("Chi's maladministration claim focuses on the possibility that the first drug in the lethal injection protocol, sodium thiopental (also known as Pentathol), will not be properly administered.").

[40] Thus, the applicant's subsequent writ application does not fail to satisfy Article 11.071,

because a challenge to the particular method of execution was not yet ripe at the time these applicants filed their initial applications for writ of habeas corpus, those claims were factually unavailable at that time and may be brought in a subsequent writ application.[41] When a claim in a subsequent writ application states facts which, if true, would entitle the applicant to relief, and also includes a pleading of facts sufficient to establish that the subsequent writ application is not abusive, Article 11.071 contemplates that it be returned to the convicting court where the writ issues as a matter of law, and the convicting court can proceed with whatever factual development it deems appropriate, at its discretion.[42]

---

Section 5, because it does not state facts sufficient to make out a prima facie case of a federal constitutional claim, as was the case in *Ex parte Staley*, 160 S.W.3d 56 (Tex. Crim. App. 2005).

41

TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(1) and (e) (subsequent habeas application must contain specific facts sufficient to establish that "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual . . . basis for the claim was unavailable on the date the applicant filed the previous application[.] * * * [A] factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) of the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.").

We recently held, in a near-unanimous opinion, that a lethal-injection challenge was not "ripe" on direct appeal, since there was no execution date and the "method in which lethal injection is currently administered is not determinative of the way it will be administered at the moment of appellant's execution." *Gallo v. State*, 239 S.W.3d 757, 780 (Tex. Crim. App. 2007). By this reasoning, the factual basis for these applicants' challenges to the lethal-injection protocol could not have been "ascertainable through the exercise of reasonable diligence" at the time their initial writ applications were filed, since any execution would still likely be a number of years away, and the protocol could change during the interim. Indeed, in more recent filings challenging the lethal-injection protocol, we have been advised that the protocol was amended as recently as May 30th of this year!

42

TEX. CODE CRIM. PRO. art. 11.071, § 6(b) ("If the convicting court receives notice that the requirements of Section 5 for consideration of a subsequent application have been met, a writ of

Now that the Supreme Court has provided the applicable standard, we should allow the litigation to proceed in accordance with the statutory scheme. It should be easy enough to litigate whether the Texas protocol for lethal injection, as actually implemented by the Director of the Texas Department of Criminal Justice, Correctional Institutions Division, passes Eighth Amendment muster. There can be only two outcomes to such litigation, if it is allowed to proceed on the merits. Either (after adequate discovery and factual development below) our protocol (as implemented) will be deemed substantially similar to Kentucky's, and hence, constitutional, or it will be found lacking in some respect (probably involving the procedures for assuring that the first drug is adequately administered). If we find substantial similarity, that will end the litigation—in this and, presumably, every other capital writ that raises the issue, so long as the protocol is maintained and followed. If not, then the Director should know how to modify the protocol to achieve a constitutionally acceptable method of lethal injection, and the matter will be put to rest soon enough. It is only a matter of time. Still, the plurality denies the applicant a state forum to develop the issue, though his pleading is sufficient.[43] I am at a loss to understand why.

---

habeas corpus, returnable to the court of criminal appeals, shall issue by operation of law."); § 9(a) ("To resolve the issues, the court may require affidavits, depositions, interrogatories, and evidentiary hearings and may use personal recollections.").

[43] It may be that inmates facing imminent execution by lethal injection in Texas can bring a claim in our state civil courts that our protocol violates the Eighth Amendment under the *Baze* standard—I do not know. But even if such a civil forum is available to death-row inmates in theory, that forum will prove quite impractical for most. Few such lawsuits brought in civil court will be

Apparently the Court will not tolerate actual litigation of the issue if that means the death machine meanwhile must stand idle. But we cannot fix the machine while the cogs are turning. I would maintain the stays of execution in these causes and return them to their respective district courts for ordinary factual development. Because the Court does not, I am compelled to dissent.[44]

Filed: June 9, 2008
Publish

---

amenable to final resolution prior to the scheduled execution dates. This Court has held that neither the district courts nor the courts of appeals in Texas have jurisdiction in a civil case to enter an order enjoining an execution. *State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 396 (Tex. Crim. App. 1994). Because this Court refuses to exercise habeas corpus jurisdiction, and because the civil courts cannot enjoin executions even if they can entertain challenges to the lethal-injection protocol, dozens, perhaps even scores, of death-row inmates may eventually be executed before the matter could be resolved on the civil side of the docket. And in the event that the civil courts should eventually conclude, in a lawsuit that is commenced years in advance of any scheduled execution date (and assuming the civil courts do not declare such a suit "unripe" for adjudication, as this Court has done, *see* note 41, *ante*), that our protocol is not sufficiently similar to Kentucky's to survive constitutional scrutiny, we will have meanwhile executed that many death-row inmates in a cruel and unusual manner.

[44] These are not the knee-jerk sentiments of a bleeding heart. As a district-court judge for ten years, I presided over capital murder trials and imposed the death penalty without reservation when the law required it. But capital habeas applicants are entitled to due course of the law. *Ex parte Ramos*, 977 S.W.2d 616 (Tex. Crim. App. 1998). And it is almost axiomatic that death is a different kind of punishment, requiring a higher degree of reliability, and that, where the death penalty is involved, more process is due, not less. *E.g.*, *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980).