IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,183






IN RE MORRIS WAYNE SIMON, Relator


v.


LENA LEVARIO, 204TH JUDICIAL DISTRICT COURT

OF DALLAS COUNTY, Respondent





ON PETITION FOR A WRIT OF PROHIBITION


IN CAUSE NO. F-08-54622-Q FROM THE 204TH


JUDICIAL DISTRICT COURT OF DALLAS COUNTY





 Price, J., delivered the opinion of the Court in which Meyers, Womack,
Johnson, Keasler, Hervey, Holcomb and Cochran, JJ., joined. Keller, P.J.,
concurred in the result.


O P I N I O N



 The relator was indicted in Dallas County for the offense of capital murder. The State
elected not to seek the death penalty. During pretrial proceedings, the relator "indicated that
[he] seeks to present the testimony of a mental health expert in regards to [his] mental state
and the voluntariness of his confession." (1) In response, the State filed a motion seeking to
have the relator evaluated by its own psychiatric expert so that it could be prepared to rebut
any expert testimony the relator might offer in a pretrial suppression hearing or at trial. The
trial court granted the State's motion, ordering the relator to submit to an examination by a
State-designated expert. The State's expert was specifically ordered not to interrogate the
relator about the facts of the offense itself and not to reveal the results of his examination to
the prosecutors unless and until the relator's expert should testify.

 The relator has now filed an application for writ of prohibition in this Court, seeking
relief from the trial court's order subjecting him to examination by the State's expert. (2) The
relator argues that the trial court's order impinges upon his Fifth and Fourteenth Amendment
right to be free from compelled self-incrimination. He argues that the authorities cited by the
State in support of the trial court's order are factually distinguishable from his case, and that
none expressly permits the examination by a State's expert under the circumstances presented
here. Because we find that the relator has failed to satisfy at least one of the criteria for
obtaining extraordinary relief, we deny his application.


STANDARD FOR EXTRAORDINARY RELIEF

 The traditional test for determining whether mandamus or prohibition relief is
appropriate requires the relator to establish two things. (3) First, he must show that he has no
adequate remedy at law to redress the harm that he alleges will ensue if the act he wishes to
prohibit is carried out. (4) Second, he must show that the act he seeks to compel or prohibit
does not involve a discretionary or judicial decision. (5) If the relator fails to satisfy either
aspect of this two-part test, then relief should be denied. As to the latter requirement, we
have said that it is satisfied if the relator can show he has "a clear right to the relief
sought"-that is to say, "when the facts and circumstances dictate but one rational decision"
under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law
sources), and clearly controlling legal principles. (6)

 While a trial court has a ministerial duty to rule upon a motion that is properly and
timely presented to it for a ruling, in general it has no ministerial duty to "rule a certain way
on that motion." (7) By this we mean that mandamus or prohibition will not lie to "compel the
trial court 'to rule a certain way' on an uncertain and unsettled issue the resolution of which
involved a fair amount of discretion." (8) In short, it is improper to order a trial court to
exercise its judicial (as opposed to its ministerial) function in a particular way unless the
relator has a "clear right to the relief sought," i.e., the law he invokes is definite,
unambiguous, and unquestionably applies to the indisputable facts of the case. Even when
the facts are undisputed, the extraordinary mechanism of a writ of prohibition or mandamus
will not lie to resolve "a hotly contested unsettled 'question of law'[.]" (9)

APPLICATION OF LAW TO FACT

 For the proposition that it should be allowed to have its expert examine the relator, the
State invoked our opinion in Lagrone v. State. (10) The relator argues that Lagrone is
distinguishable because there, the defendant proposed to introduce expert testimony with
respect to the issue of future dangerousness in a capital case in which the State sought the
death penalty. The State responds that the particular factual context matters little--the
principle is the same, namely, that once a criminal defendant constructively testifies by
submitting to an examination in support of his own testifying expert's opinion, he has waived
his Fifth and Fourteenth Amendment privilege against self-incrimination, and so must choose
either to submit to an examination by the State's expert as well or else have his own expert's
testimony excluded from evidence.

 In support of its argument, the State cites this Court's unpublished opinion in Ward
v. State. (11) There we unanimously held, citing Lagrone and Chamberlain v. State, (12) that the
operative principle was one of waiver of the Fifth and Fourteenth Amendment privilege, and
that it was not limited to the factual context of rebutting expert testimony from the defense
with respect to future dangerousness. We articulated the principle thus:

 [I]f a defendant breaks his silence to speak to his own psychiatric expert and
introduces that testimony which is based on such interview, he has
constructively taken the stand and waived his fifth amendment right to refuse
to submit to the state's psychiatric experts. The focus is on the defendant's
choice to break his silence. * * * The issue is whether the psychiatric
testimony he intended to introduce was based on his own participation in the
psychiatric testing and examination. (13)


Focusing on the waiver, we held that the holding of Lagrone applied equally to psychiatric
evidence in mitigation of the death penalty. "The nature of the psychiatric testimony to be
presented is immaterial--that it is being presented by the defendant is enough to trigger the
rule." (14) We deemed this principle sufficiently unremarkable that we did not even see fit to
designate our opinion for publication.

 We do not now rely on our unpublished opinion in Ward for the proposition that the
trial court did not err to grant the State's motion for its own psychiatric examination in the
factual context of this non-death capital prosecution. But we do regard it as ample evidence
that the issue is--at best--an "unsettled" legal question. If what we said in Lagrone is not
limited in principle to the type of psychiatric evidence presented at the punishment phase of
a death-penalty case, it may not be limited in principle to the punishment phase of a capital
murder death-penalty trial, or even to death-penalty cases at all. Accordingly, we cannot say
under the circumstances of this case--and particularly in view of the tight restrictions the
trial court imposed on the State in its order--that the relator has established a clear right to
be insulated from examination by a State's psychiatric expert. (15) In granting the State's
motion in this case, the trial court exercised a manifestly judicial (and not a ministerial)
function. (16) Such an "accomplished judicial act" is not subject to the extraordinary remedy
of prohibition. (17)

 For this reason, we deny the relief that the relator seeks.


Delivered: November 18, 2009

Publish
1. Application for Writ of Prohibition, at 2.
2. The relief that the relator seeks is more in the nature of a writ of mandamus than a writ of
prohibition, since he would have us "undo" an "accomplished judicial act." State ex rel. Wade v.
Mays, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985). That being the case (and unlike the case with
respect to writs of prohibition), we could simply have dismissed the application for failure to present
it first to the appropriate court of appeals. Padilla v. McDaniel, 122 S.W.3d 805, 808 (Tex. Crim.
App. 2003). Regardless of whether we characterize it as a writ of prohibition or a writ of mandamus,
however, we will dispose of the relator's application against him on another basis.
3. The standards for mandamus and prohibition relief are essentially the same. State ex rel.
Wade v. Mays, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985).
4. Id. at 898-99; Ex parte Chi, 256 S.W.3d 702, 703 (Tex. Crim. App. 2008).
5. E.g., De Leon v. Aguilar, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004).
6. State ex rel. Young v. Sixth Judicial District Court of Appeals, 236 S.W.3d 207, 210 (Tex.
Crim. App. 2007); Buntion v. Harmon, 827 S.W.2d 945, 947, 948 n.2 (Tex. Crim. App. 1992). 
Stated another way, an act may be regarded as "ministerial" when the facts are undisputed and, given
those undisputed facts, "the law clearly spells out the duty to be performed . . . with such certainty
that nothing is left to the exercise of discretion or judgment." State ex rel. Healey v. McMeans, 884
S.W.2d 772, 774 (Tex. Crim. App. 1994) (quoting Texas Dept. of Corrections v. Dalehite, 623
S.W.2d 420, 424 (Tex. Crim. App. 1981)).
7. State ex rel. Curry v. Gray, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).
8. State ex rel. Rosenthal v. Poe, 98 S.W.3d 194, 199 n.3 (Tex. Crim. App. 2003).
9. State ex rel. Wade, supra, at 898.
10. 942 S.W.2d 602, 609-12 (Tex. Crim. App. 1997).
11. Ward v. State, 2007 WL 1492080 (Tex. Crim. App., No. AP-74,695, delivered May 23,
2007) (not designated for publication).
12. 998 S.W.2d 230 (Tex. Crim. App. 1999).
13. Ward, supra (slip op. at 6).
14. Id. (slip op. at 7).
15. In his brief in support of his application for writ of prohibition, the relator argues that, in the
non-death-penalty context, we should not regard the State's interest in rebutting defense psychiatric
testimony to be sufficiently compelling to outweigh the accused's constitutional privilege against
self-incrimination. Brief in Support of Application for Writ of Prohibition, at 4-10. Even assuming
that such a balancing approach is consistent with the constructive waiver principle we have
articulated in our case law (a proposition that is at least debatable), and that we might tentatively
agree that the balance should tip in the relator's favor, his contention amounts to no more than an
argument for why the unsettled question should ultimately be resolved in his favor. There is no
statute or court opinion that yet says so, as the relator's counsel conceded ("I have not found any law
on it one way or the other") at the hearing on the State's motion. The relator's argument falls far
short of establishing the necessary "clear right" to relief.
16. The trial court had both subject matter jurisdiction and jurisdiction over the person, we
presume, by virtue of the indictment--at least the relator does not argue otherwise. Under some
circumstances, we have observed, even a trial court with general jurisdiction may lack authority to
take a certain action, and sometimes that lack of authority will render its purported action "void." 
State v. Moore, 225 S.W.3d 556, 568 n.47 (Tex. Crim. App. 2007), citing Davis v. State, 956 S.W.2d
555, 559 (Tex. Crim. App. 1997). We have occasionally granted extraordinary relief when a trial
court with general jurisdiction has nevertheless acted in the absence of authority. E.g., Stearnes v.
Clinton, 780 S.W.2d 216, 223 (Tex. Crim. App. 1989) (trial judge who presided over capital murder
trial lacked "the inherent power" to remove court-appointed counsel under the circumstances and
therefore acted "without authority"; therefore, his order removing counsel from the case was subject
to mandamus relief). A trial court has no discretion to act where it lacks authority. But that is not
the relator's argument here. The relator argues that we should not regard the State's interests in
rebuttal as weighty enough in the procedural posture of this case to trump his constitutional privilege
absent express legislation to implement an order such as the one at issue here, see note 15, ante, and
thus challenges the correctness of the trial court's ruling. He never expressly argues, however, that,
in the absence of specific legislation, the trial court categorically lacked authority to rule on the
State's motion. Indeed, his argument seems to concede that a trial court may grant such a motion
(as did the trial courts in Lagrone, Chamberlain, and Ward) so long as the balance between the
State's interest and his constitutional privilege ultimately tips in the State's favor.
17. State ex rel. Wade, supra, at 897 (emphasis added).