

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. AP-76,374, AP-76,376, & AP-76,381

### JONATHAN MARCUS GREEN, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 00-10-06435-CR
### IN THE 221st JUDICIAL DISTRICT COURT
### MONTGOMERY COUNTY

**PRICE, J., filed a concurring opinion in which JOHNSON and ALCALA, JJ., joined.**

### <u>CONCURRING OPINION</u>

This Court has no responsibility more awesome than its duty to say what the law is with respect to the implementation of capital punishment. Few cases we have seen this term match the importance of these consolidated cases, which call upon us to decide how the Texas Legislature intended that the Eighth Amendment issue of the competency of a condemned inmate to be executed should properly be determined. In its opinion today,

however, I fear that the Court has inadvertently thwarted the legislative intent, essentially making law rather than accurately construing it. If I am wrong about this, then, of course, the Legislature can simply leave the statute on the books as it currently stands. But if I am right that the Court has misjudged the legislative intent, I urge the Legislature to amend the statute in such a way as to make what was its original intent unmistakable, as it did several years back with respect to the post-conviction DNA statute.[1]

All three of these cause numbers relate in one way or another to Green's motion, under Article 46.05 of the Texas Code of Criminal Procedure, for a determination of his competency to be executed.[2] Our Cause No. AP-76,374 is the review of the trial court proceedings that is currently permitted, on motion of the losing party below, by Section (*l*) of Article 46.05.[3] Cause No. AP-76,376 is a separate habeas corpus application by which

---

[1] *See Smith v. State*, 165 S.W.3d 361, 363-64 (Tex. Crim. App. 2005) (describing the Legislature's clarification of its original intent with respect to the substantive standard for post-conviction DNA testing in light of this Court's construction of the statute's initial incarnation in *Kutzner v. State*, 75 S.W.3d 427 (Tex. Crim. App. 2002)).

[2] TEX. CODE CRIM. PROC. art. 46.05.

[3] *See Id*. § (*l*) ("Following the trial court's determination under Subsection (k) [after the trial court has found a "substantial showing" of incompetency and appointed experts under Subsection (f), reviewed all of the evidence, and determined whether the defendant has established his incompetency by a preponderance of the evidence] and on motion of a party, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the appropriate documents for that court's review and entry of a judgment of whether to adopt the trial court's order, findings, or recommendations issued under Subsection (g) or (k). The court of criminal appeals also shall determine whether any existing execution date should be withdrawn and a stay of execution issued while that court is conducting its review or, if a stay is not issued during the review, after entry of its judgment.").

Green is also attempting to raise the issue of his competency to be executed. Finally, Cause No. AP-76,381 is a purported appeal from an order, entered after the record of the competency hearing had already been forwarded to us, refusing to recuse the trial court judge from further participation in the competency proceedings.

## I. CAUSE NO. 76,374: THE ARTICLE 46.05 REVIEW

Green timely filed his motion to have competency determined under the statute—that is to say, he filed it sufficiently early that this Court is not foreclosed from reviewing the trial court's ruling thereon.[4] An evidentiary hearing was not held on that motion until two days before the originally scheduled execution date. There, evidence was presented that would support either a finding that the appellant was competent or a finding that he was not. Not surprisingly, the appellant's expert and the State's expert were not in agreement. The convicting court found the State's expert to be more qualified and more credible. Unfortunately, Article 46.05 does not clearly identify a standard by which this Court is to conduct its "review" of the convicting court's findings under Section (*l*). The statute says that the convicting court is required to "determine whether . . . the defendant has established by a preponderance of the evidence that the defendant is incompetent to be executed."[5] On

---

[4] *See Id.* § (l-1) ("[T]he court of criminal appeals may not review any finding of the defendant's competency made by a trial court as a result of a motion filed under this article if the motion is filed on or after the 20th day before the defendant's scheduled execution date."). Green filed his Article 46.05 motion on June 1, 2010; his execution was scheduled for June 30, 2010.

[5] *Id.* § (k).

motion by either party, the record of the hearing is then forwarded post haste to this Court for its "review and entry of a judgment of whether to adopt the [convicting] court's order, findings, or recommendations[.]"[6] Do we, as would be typical in the context of a direct appeal, give complete deference to the convicting court's resolution of questions of pure fact, and of mixed questions of law and fact that depend upon an assessment of the witnesses' demeanor and credibility, and review *de novo* only pure questions of law and mixed questions of law and fact that do not turn on credibility?[7] Or do we, instead, as I conclude, afford the convicting court's findings of fact the kind of qualified but not complete deference that we give in the context of post-conviction habeas corpus review?[8]

Today the Court reasons that the most appropriate standard for our "review" under Article 46.05 is the ordinary, highly deferential appellate standard announced in *Guzman*.[9] I disagree. The statutory language does not sound like direct-appeal language. According to the statute, we are supposed to "review" the record with an eye toward the "entry of a judgment of whether to adopt the trial court's order, findings, or recommendations[.]"[10] This

---

[6]  *Id*. § (*l*).

[7]  *E.g.*, *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[8]  *E.g.*, *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008).

[9]  Majority Opinion at 9 (citing *Guzman*, *supra*, at 89).

[10]  TEX. CODE CRIM. PROC. art. 46.05 § (*l*).

sounds more like the sort of review we conduct of a trial court's recommended findings of fact and conclusions of law in post-conviction habeas corpus proceedings. In that context, we are the "ultimate" fact-finder, "with the prerogative to reject the convicting court's recommendations on those rare occasions when we deem it appropriate, even when they are supported by the record, if we think another disposition is manifestly *better* supported by the record."[11]

Even if the language of Section (*l*) does not plainly set up such a posture for this Court's review, it certainly does not plainly prescribe an ordinary direct *appellate* posture either. It is, at best, ambiguous. Consulting legislative history, as is appropriate in construing an ambiguous statute,[12] reveals that it was indeed the manifest intent of the drafters of the 2007 amendment to Article 46.05, Section (*l*), to establish a habeas-like review process. It may be recalled that, as originally enacted in 1999, Article 46.05 permitted our review *only* of a trial court's finding of *in*competency to be executed.[13] The 2007 legislation that subsequently amended Section (*l*) was intended to "equalize[ ] the appellate rights for the prosecution and the defense and shift[ ] the method of court determinations *to*

---

[11] *Ex parte Spencer*, 337 S.W.3d 869, 879-80 n.1 (Tex. Crim. App. 2011) (Price, J., concurring); *Ex parte Robbins*, 360 S.W.3d 446, 467 n.14 (Tex. Crim. App. 2011) (Price, J., concurring).

[12] *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

[13] Acts 1999, 76th Leg., ch. 654, § 1, p. 3226, eff. Sept. 1, 1999; *Ex parte Caldwell*, 58 S.W.3d 127, 130 (Tex. Crim. App. 2000).

*a process similar to that adopted in habeas corpus proceedings.*"[14]  Because of the language of Section (*l*) itself, and the evident legislative purpose behind that language, I believe that the Court makes a mistake in characterizing our 46.05, Section (*l*), review as an ordinary direct appeal.

Having characterized the "review" under Article 46.05 as a "direct appeal" at the outset, the Court reasons from this premise that an abuse of discretion standard of "appellate" review is the most appropriate because the competency determination will typically boil down to a combination of historical fact finding and resolution of the credibility of (presumably expert) witnesses.[15]  Citing cases from other state and federal jurisdictions as examples, the Court observes that the fact- and credibility-bound nature of the inquiry "would necessitate a highly deferential standard of review," such as an abuse of discretion

---

[14]

House Bill 1545, House Criminal Jurisprudence Committee Bill Analysis, at 1 (http://www. capitol.state.tx.us/tlodocs/80R/analysis/PDF/HBO1545H.pdf#navpanes=0). *See also* Senate Research Center Bill Analysis, at 1 (http://www.capitol.state.tx.us/tlodocs/80R/analysis/PDF/ HBO1545E.pdf#navpanes=0) ("Article 46.05, Code of Criminal Procedure, is currently interpreted to contain only a one-way appeal, allowing the prosecution to appeal a court finding that an inmate is incompetent to be executed, while not providing the same ability to appeal to the inmate.  H.B. 1545 equalizes the appellate rights for the prosecution and the defense and shifts the method of district court determinations *to a process similar to that adopted in habeas corpus proceedings.*"); House Research Organization Bill Analysis, at 2 (http:www.hro.house.state.tx.us/pdf/ba80r/ hb1545.pdf#navpanes=0) ("HB 1545 specifically would allow either party to appeal a trial court's finding on incompetency.  The bill would make the appeals process more like those in actions on writs of habeas corpus *by having the trial court make findings and having the Court of Criminal Appeals make the final decision on appeal.*") (All emphases added).

[15]

Majority Opinion at 9.

standard.[16]  But this logic relies upon the Court's assumption that the trial court is the institutional fact-finder and we are but an ordinary "appellate" court.  That is not what our Legislature has prescribed in Article 46.05, Section (*l*).  None of the extra-jurisdictional cases that the Court cites has a statute like ours.[17]  By indicating an intention to implement a habeas-like scheme, the Legislature has made it clear that—at least in cases in which the competency motion is filed twenty days or more before the scheduled execution, and a

---

[16]

  *Id*. at 10 & nn.24 & 25.

[17]

  The Court cites three state cases.  Majority Opinion at 10 n.24.  The first is *State v. Irick*, 320 S.W.3d 284 (Tenn. 2010).  Tennessee has no statute governing competency to be executed proceedings (or at least it didn't as of *Irick*), so its procedure is court-made.  In *Van Tran v. State*, 6 S.W.3d 257, 271-72 (Tenn. 1999), the Tennessee Supreme Court judicially crafted a procedure that included an "appeal" of the trial court's ruling.  Even then, the appellate standard was: "the trial court's finding on the issue of competency will be reviewed as a question of fact and presumed correct, *unless the evidence in the record preponderates against the finding*."  *Id*. at 272.  This hardly sounds like an abuse of discretion standard of review.  The second is *Commonwealth v. Banks*, 29 A.3d 1129, 1135 (Pa. 2011).  Like Tennessee, however, Pennsylvania has no statutory scheme in place for determining competency to be executed, and the Pennsylvania Supreme Court also found itself having to judicially fashion a constitutionally adequate procedure out of whole cloth.  In the absence of contrary statutory language, the Court appointed a master to find facts and then accorded ordinary appellate deference to the master's fact findings.  The third case is *State v. Brooks*, 2011-Ohio-5877 (Ohio Ct. App. 2011).  While Ohio has a statutory scheme for determining competency, the statutes assign the fact finding function exclusively to the trial court and do not even make mention of review by a higher court.  OHIO REV. CODE ANN. §§ 2949.28 & 2949.29.

  The Court next cites two federal cases.  Majority Opinion at 10 n.25.  The first case is *Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011).  *Bedford* is indeed a case about competency to be executed, but the issue to which the Sixth Circuit applied the abuse of discretion standard was *not* the substantive competency issue, but whether the federal habeas applicant was entitled to a stay of execution while the federal courts reviewed the merits of his eleventh hour claim.  The second case that the Court cites, *Ferguson v. Sec'y for the Dept. of Corr.*, 580 F.3d 1183, 1221 (11th Cir. 2009), does not even involve an issue of competency to be executed at all.  In short, *Ferguson* and *Bedford* are *not* cases, as the Court describes them, "that have adopted an abuse-of-discretion standard in reviewing competency-to-be-executed findings."  Majority Opinion at 10.

motion for this Court's "review" is made—this Court should serve as the "ultimate" fact-finder. Nothing in our statutory scheme "necessitates" application of the ordinary "highly deferential" *appellate* standard when this Court has been assigned the ultimate fact-finding duty. It is true that in the habeas corpus context we have said that we *will* usually defer to the trial court's recommended findings and credibility determinations when they are supported by the record, as a matter of comity and because the trial judge was "Johnny-on-the-spot" at the competency hearing. In the final analysis, the evidence of incompetency in this case is not so compelling that I would refuse to pay our ordinary deference to the convicting court's recommendation today. But we do not invariably *have* to, as we do under the *appellate* abuse of discretion standard that the Court adopts today, and in the next case that comes along, applying the proper standard could make all the difference. This is not an ordinary direct appeal.

## II. CAUSE NO. 76,376: HABEAS CORPUS COGNIZABILITY

Back before either Article 46.05 or Article 11.071 was enacted, this Court entertained any claim of incompetency to be executed under the auspices of Article 11.07, as a post-conviction application for writ of habeas corpus in a felony case. In *Ex parte Jordan*, a 1988 case, we adopted the recommendation of the convicting court and granted habeas corpus relief on a claim of incompetency to be executed, all the while pleading with the Legislature to enact a statute that would specifically guide trial courts both substantively and

procedurally.[18]   The Legislature would not act for another ten-plus years, finally passing statutory procedures in 1999.[19]   In the meantime, there was never any substantial question raised about the cognizability of the claim in post-conviction habeas corpus proceedings—if only because there was no other procedure in Texas to implement the constitutional dictates of *Ford v. Wainwright*.[20]

Perhaps that has changed in light of *Alba* and *Chi*.[21]   In these cases, a plurality of this Court held that a challenge to the constitutionality of Texas's lethal injection protocol was not cognizable in post-conviction habeas corpus proceedings because it did not call into question the validity of the conviction or death sentence, but only the particular manner in which the death sentence would be carried out.   Today the Court suggests that this same rationale would render a claim of incompetency to be executed non-cognizable—even if Green were found to be incompetent, it would invalidate neither his conviction for capital murder nor his death sentence; it would only delay the latter for the pendency of his incompetence.[22]   The Court also reasons that, because Article 46.05 now provides a statutory

---

[18]

758 S.W.2d 250, 252, 254-55 (Tex. Crim. App. 1988).

[19]

Acts 1999, 76th Leg., ch. 654, § 1, eff. Sept. 1, 1999.

[20]

477 U.S. 399 (1986).

[21]

*Ex parte Alba*, 256 S.W.3d 682 (Tex. Crim. App. 2008) (plurality op.);  *Ex parte Chi*, 256 S.W.3d 702 (Tex. Crim. App. 2008) (plurality op.).

[22]

Majority Opinion at 6-7 (observing in context of discussing *Alba* that "[a] finding of

procedure for determining incompetency to be executed, including (since 2007, at least) a provision for our "review" of the trial court's determination, he cannot challenge his competency in a post-conviction writ because he has an adequate, statutorily prescribed remedy at law, and "a writ of habeas corpus is not a substitute for a direct appeal."[23]

I agree that it will often, if not usually, be the case that a condemned inmate facing imminent execution with a claim of incompetence will now have an adequate remedy at law via Article 46.05 (though I disagree that the nature of the Article 46.05-authorized "review" is an ordinary "direct appeal"), and I agree that Green's is one of those cases. He filed his motion before the twenty-day deadline to assure both that the trial court could make a timely determination of his competency and that this Court would be permitted to review that determination under Section (*l*). Therefore, I agree with the Court's ultimate conclusion that Green *himself* had an adequate legal remedy under Article 46.05 and need not be permitted *also* to raise his present claim by way of a habeas corpus proceeding.

Having said that, I must add that I believe that the Court's opinion with respect to habeas cognizability may be stated a little too categorically to accommodate every possible future contingency.[24] We could encounter mentally ill inmates in the future who genuinely

---

incompetency results in only a stay during the defendant's incompetence; it would not render the appellant's sentence invalid").

[23] *Id*. at 7.

[24] *See id*. ("Neither the plain language of Article 11.071 nor our decisions in *Smith* and *Alba* establish competency-to-be-executed claims as cognizable on a writ of habeas corpus. Because

suffer acute mental breakdowns that render them incompetent *later* than twenty days before the scheduled execution date. Such inmates would be able to obtain a ruling from the trial court under Article 46.05, but that ruling would not be subject to our review.[25] They would have some remedy at law, but it could reasonably be debated whether that legal remedy was "adequate" absent this Court's review. We might want to leave the door open to an inmate under these circumstances to seek habeas relief. If *Alba* and *Chi* foreclose the possibility of *post-conviction* habeas corpus relief under Article 11.071, because a claim of incompetency does not challenge the conviction or death sentence, it remains at least arguable that an inmate in this posture should be allowed to seek habeas relief by invoking this Court's statutorily unregulated *original* habeas corpus jurisdiction—just as Judge Cochran suggested in her concurring opinions in *Alba* and *Chi*.[26] We should take care not to say anything now in Cause No. 76,374 that would prevent us from at least entertaining such an argument if and when the time comes.[27]

---

Article 46.05 provides the appellant with all of the process that is due to him, we see no reason to depart from the well-established principle that a writ of habeas corpus is not a substitute for a direct appeal.").

[25] TEX. CODE CRIM. PROC. art. 46.05, § (l-1).

[26] *Alba*, *supra*, at 689-90 (Cochran, J., concurring); *Chi*, *supra*, at 704 (Cochran, J., concurring).

[27] Green also argues that we must permit him to pursue habeas relief on his competency claim because of certain deficiencies in the *statutory* scheme under Article 46.05. The Court correctly rejects this argument, but once again I fear it speaks unnecessarily broadly in its rejection. The Court declares globally that "[w]e do not find any constitutional infirmities lurking within Article 46.05."

## III. CAUSE NO. 76,381: REVIEW OF THE RECUSAL MOTION

The Court declares that Green should lose on the merits of his recusal appeal, assuming that his appeal is properly before us.[28] But the Court *holds* that the merits of the appeal are *not* properly before us. Because the record of the Article 46.05 hearing had already been forwarded to this Court for our "review" under Section (*l*), the Court reasons, the trial court lacked authority to entertain Green's recusal motion and there is nothing for him to appeal.[29] But this reasoning also seems to depend upon the Court's assumption that what Article 46.05 provides for is an ordinary "direct appeal" of the trial court's Article

---

Majority Opinion at 7. I agree that the particular application of Article 46.05 to Green satisfied the procedural dictates of *Panetti v. Quarterman*, 551 U.S. 930 (2007) . But I disagree that there are no—at least potential—constitutional infirmities in the statute as it might apply to future death row inmates. I presume the trial court found that Green made the threshold showing to allow him to obtain expert examination under Article 46.05, Section (f), since it in fact appointed two experts. But Section (f) does not explicitly require the trial court to assign one of those experts to assist the defense to rebut any showing by the State of competency. In a given case, this statutory deficiency might well violate *Panetti*'s requirement "to provide petitioner with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts." 551 U.S. at 951. The prudent trial court in Green's case seems to have assigned one of the statutorily authorized experts specifically to assist Green—in any event, Green was able to rely heavily upon the opinion of Dr. Mosnik to make his case for incompetency. I believe this satisfies the "basic requirement" that the defense be adequately equipped "to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination[.]'" *Id*. at 950 (quoting Justice Powell's concurring opinion in *Ford*, *supra*, at 427). But it is not at all difficult to imagine potential constitutional infirmities that might arise on the facts of some future case. Article 46.05 could very well be applied some day in such a way that it would "infringe upon . . . these rights." Majority Opinion at 8. There is no need to declare the statute constitutionally flawless to dispose of this case, and the Court should not.

[28] Majority Opinion at 18.

[29] *Id*. at 16-18.

46.05 ruling. For reasons I have developed at length *ante*, however, it is clear to me from the statutory language and from legislative history that our review is *not* an ordinary "direct appeal."

There is a simpler approach—one that conforms to my view that our "review" is more in the nature of a habeas review. In the non-capital post-conviction habeas corpus context, we do not consider the trial court to lack jurisdiction or authority to entertain amended or supplemental pleadings with respect to an Article 11.07 writ of habeas corpus just because the original writ application has already been forwarded to this Court under the provisions of Article 11.07, Section (d).[30] We will typically consider whatever matters continue to be forwarded to us from the convicting court right up to the point at which we finally rule on the habeas corpus application. Although there is no case law to cite for this proposition, it has long been the Court's established practice. I do not see why we cannot handle Article 46.05 reviews similarly. A motion to recuse is appropriate in a post-conviction habeas corpus proceeding, we recently held.[31] I presume that they are equally appropriate for Article 46.05 competency proceedings. A convicting court's "order, findings, or recommendations" under Article 46.05 can easily be construed to constitute the "final judgment" that suffices to authorize appeal of a recusal motion under former Texas Rules of Civil Procedure, Rule

---

[30] TEX. CODE CRIM. PROC. art. 11.07 § (d).

[31] *Ex parte Sinegar*, 324 S.W.3d 578 (Tex. Crim. App. 2010).

18a(f), (now Rule 18a(j)(1)(A)).[32]  After all, the trial court's "order, findings, or recommendations" are the functional equivalent of a "final judgment"—at least in contemplation of the evident purpose of the rule, to prevent interlocutory appeals. I see no reason to construe Rule 18a(f) so strictly that we cannot entertain the merits of an adverse ruling on a recusal motion—even if that motion was not ruled upon until after the record of the 46.05 hearing has already been forwarded to us—as long as the condemned inmate can get the matter in front of us before we ourselves have finally disposed of his Article 46.05 review. This approach has the obvious benefit of affording us maximum flexibility to deal with the inherently exigent nature of last-minute claims of incompetency to be executed.[33]

In any event, I agree with the Court's apparent dicta that the appellant has not demonstrated that the regional presiding judge abused its discretion to deny Green's motion

---

[32]

TEX. R. CIV. PROC. 18a(f) ("If the motion is denied, it may be reviewed for abuse of discretion on appeal from the final judgment.").

[33]

The Court argues that a much better vehicle for an inmate in Green's position to challenge an adverse recusal ruling would be an original application for writ of habeas corpus (*not* brought under the auspices of Articles 11.07, 11.071 or 11.072 of the Code of Criminal Procedure), invoking our habeas corpus jurisdiction under Article V of the Texas Constitution. Majority Opinion at 17-18 & n.50. It is not self-evident to me, however, that a challenge to a lower court's ruling on a recusal motion is cognizable in a writ of habeas corpus of *any* description. "The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty." TEX. CODE CRIM. PROC. art. 11.01. I doubt that our correction of an erroneous ruling on a motion to recuse would affect the legality of Green's literal "custody" or "restraint." *See* TEX. CODE CRIM. PROC. arts. 11.21 through 11.23. Nor is it likely that Green otherwise has any kind of residual "liberty interest" in remedying an erroneous ruling on his motion to recuse. *Compare Ex parte Alba*, *supra*, at 693 (Price, J., dissenting) (even death row inmates who may constitutionally be executed have a residual liberty interest in not being executed in a manifestly cruel and unusual *manner*, which interest should be deemed subject to vindication via post-conviction writ of habeas corpus).

to recuse the convicting court. On that basis I concur in the Court's judgment to deny any kind of relief in cause number AP-76,381.

## IV. CONCLUSION

I ultimately agree with the Court's bottom line with respect to all three cause numbers that are before us. To the extent that the Court's reasoning with respect to all three is premised, however, upon the notion that Article 46.05 prescribes an ordinary direct appeal that limits our review of the competency determination to the "highly deferential" abuse of discretion standard, it fails to credit the manifest legislative intent. For this reason, though I concur in the various results that the Court reaches, I cannot join its opinion.


FILED:     June 27, 2012
PUBLISH